J. E. REDINGER v. J. W. JONES, *Sheriff*, etc., *et al.*

No. 13,361. (75 Pac. 997.)

SYLLABUS BY THE COURT.

1. REPLEVIN—*When the Remedy May be Invoked.* The remedy of replevin can be invoked only in the case of a wrongful detention existing at the time the suit is commenced.

2. ——— *Validity of Judgment Admitted.* In an action of replevin for exempt property seized on execution, the validity of the judgment upon which the execution issued is admitted.

3. ——— *Party Pleading Exemption Cannot Show Sale to be Void on Other Grounds.* A debtor who, before sale, demands of the sheriff the return of his property seized on execution, on the ground that it is exempt, who attends the execution sale and there objects to the sale of the property on the ground that it is exempt, and who sues the sheriff and the purchaser of the property for its return on the ground that it is exempt, cannot, on the trial, ambush his adversaries by showing the sale to be void on other grounds.

4. PRACTICE, SUPREME COURT—*Persons Who May Obtain Reversal of Judgment of District Court.* Only those errors which affect the substantial rights of parties who are in a position to complain of them will work a reversal of a judgment of a district court.

5. JURY AND JURORS—*May Inspect Pleadings.* If, from an inspection of the record, it be apparent that a jury was not confused or misled by short and simple pleadings which the court permitted it to take in connection with the instructions, a judgment upon the verdict returned will not be set aside because of the conduct of the court in that respect.

6. JUDGMENTS—*Mistake Cured by Remittitur.* An error occasioned by the clerk wrongfully entering a judgment for a sum of money not found by the verdict of the jury and without warrant in the pleadings may be cured by a *remittitur.*

Error from Johnson district court; W. H. SHELDON, judge. Opinion filed March 12, 1904. Affirmed.

STATEMENT.

IN the month of February, 1900, Frank B. Houlette recovered a judgment against J. E. Redinger for the sum of $400 and costs. On October 11, 1900, an exe-

cution upon this judgment was issued to the sheriff of the proper county and levied upon certain corn in the shock, as the property of the judgment debtor. On October 18 of the same year Redinger made a demand upon the sheriff for the possession of the corn, on the ground that it formed a part of the exemption to which he was entitled as the head of a family. On October 22 the sheriff sold the corn to Houlette, at a sale held at the door of the court-house of the county, and not in the township where the shocks of corn were standing. On October 25 Redinger brought an action of replevin against the sheriff, the purchaser at the execution sale, and T. J. Graham and J. L. Pettyjohn, for the possession of the corn.

The petition contained the necessary formal allegations, and in addition averred that the plaintiff was a married man, the head of a family, and a resident of the county in which suit was brought. With the petition was filed an affidavit in replevin, describing the property sued for, and stating that it was taken on an order or judgment against the plaintiff, but that it was exempt, and was not taken for the payment of any tax, fine, or amercement. No order of delivery was issued. The sheriff, Jones, answered by a general denial and by pleading that he had levied upon and had sold the property claimed, under and by virtue of an execution issued upon the judgment in the case of Houlette v. Redinger, describing it. The defendant Houlette answered by a general denial and by pleading the judgment and execution mentioned, and his purchase of the property at the sale made pursuant to it. As a third defense he pleaded an offset of the balance of the judgment, after applying the proceeds of the sale of the corn to its satisfaction. The defendants Graham and Pettyjohn each pleaded special defenses, Graham

admiting inferentially that he had been in possession of the corn.   To the answer of the sheriff, Jones, the plaintiff replied affirmatively as follows:

"For further reply to the answer of the defendant Jones, plaintiff alleges and states, that long before the rendition of said judgment, or the issue of the execution and levy mentioned in said answer, plaintiff was a married man, and head of a family, consisting of a wife and three minor children, all dependent upon him for maintenance and support, was a resident of Johnson county, Kansas, and occupied the land where said corn was raised as his homestead, and planted, cultivated and raised said corn on said land in the year 1900; that prior to said pretended levy of said execution, being the owner thereof, he executed and delivered two chattel mortgages on said corn to secure the payment of two notes for the aggregate sum of $145, one of said notes payable to the order of A. D. Beckwith and one to the order of I. O. Pickering, which said chattel mortgages were duly filed for record and recorded in the office of register of deeds long before said execution was issued or said pretended levy was made on said corn; that after said pretended levy was made and before said defendant sold or offered said corn for sale, plaintiff demanded the release thereof and forbade said sale by verbal and written notice to said defendant, for the reason that said corn was exempt to plaintiff as the head of a family and was not subject to sale upon execution; that notwithstanding said demand and notice said defendant refused to release said levy or to deliver said corn to plaintiff, but kept and retained the same and afterwards made a pretended sale thereof to the defendant Houlette.   Said written notice was in the words and figures following, to wit."

Following this matter appeared the written notice referred to, the material portion of which is as follows:

"You are notified hereby that we claim said property as being exempt to us under the exemption laws

of the state of Kansas, and as necessary for the support of ourselves and family and stock for one year, as provided by law.''

To the answer of Houlette the plaintiff replied, admitting specifically the rendition of the judgment, its non-payment, the issue of execution under it, the levy of such execution upon the corn sued for, and a sale of such corn to Houlette, but alleging facts showing the corn to be exempt, and further alleging as follows:

''Plaintiff further states that before said defendant bid upon or purchased said corn at said pretended sale, plaintiff warned him not to purchase the same, and after said pretended sale plaintiff demanded said corn from said defendant, and then and there claimed the said corn as exempt property and that it was not subject to sale upon execution.''

To the answers of Graham and Pettyjohn plaintiff replied by general denials. After issues had been framed, the plaintiff, by leave of court, withdrew his replies to the answers of Houlette, Graham, and Pettyjohn, and filed instead a demurrer to the third defense of Houlette's answer and demurrers to the answers of Graham and Pettyjohn. These demurrers were all sustained. Graham and Pettyjohn again answered, and the action proceeded to trial without further replies.

To support the plaintiff's case, his attorney testified at the trial that he made the written demand upon the sheriff pleaded in the reply to the answer of that official. He further testified that he attended the sale, there demanded possession of the corn on the ground set forth in the previous written notice, read a duplicate of that notice in the hearing of the sheriff and the purchaser before the sale, and warned the sheriff and all bidders that the corn belonged to Redinger.

A portion of the court proceedings, ending with the sale of the corn, was introduced, over the objection of the plaintiff, and the claim was made that upon the evidence introduced the judgment appeared to be void.

Much evidence was introduced over the objection and exception of the defendants, relating to the consideration, good faith, transfer and validity of a mortgage lien upon the property which the plaintiff claimed he had given, and which was then held by a person not a party to the suit. No demand upon Graham and Pettyjohn was shown. No facts appeared showing that a demand upon them would have been unavailing, and at the conclusion of the plaintiff's evidence a demurrer to it was sustained in their favor.

In submitting the cause, the court instructed the jury, in a manner not satisfactory to the plaintiff, concerning the transfer by the payee of the note secured by the chattel mortgage upon the corn to its holder, and refused instructions which he offered upon the same subject. Instructions asked by plaintiff relating to the validity of the sale at the place where it was made were likewise refused. The instructions, together with the pleadings of the defendants Jones and Houlette, were allowed to be taken by the jury. The instructions, however, briefly indicated the issues to be determined.

Upon the evidence given by the sheriff and his deputy, the jury found specially that at the time suit was brought the sheriff had sold the corn and had delivered possession of it to the purchaser. Upon other evidence, the jury made findings to the effect that the corn sued for was not exempt. Findings were also returned to the effect that the note secured by the chattel mortgage referred to was given without consideration, and that the chattel mortgage itself was

given for the fraudulent purpose of securing the corn against execution upon Houlette's judgment. Other findings relating to the existence of a lien upon the corn were against the plaintiff. Some of them relating to the good faith of the transfer of the note and chattel mortgage the plaintiff asserted were inconsistent with each other, and others upon the same subject were claimed to be without support in the evidence.

Pursuant to a form submitted by the court, a general verdict was returned for the defendants Jones and Houlette. A new trial was denied. By mistake the clerk entered upon the record, in addition to matter proper to be there, a money judgment in favor of the defendant Houlette, which Houlette subsequently remitted. The plaintiff seeks a review of these proceedings upon a petition in error to this court.

*I. O. Pickering*, and *H. L. Burgess*, for plaintiff in error.

*J. W. Parker*, and *Ogg & Scott*, for defendants in error.

The opinion of the court was delivered by

BURCH, J. : This action was one of replevin. The gist of it was wrongful detention. The return of specific property was demanded. Damages were asked for wrongful detention, and the value of the property was prayed for only in the event a return of it could not be had.

The remedy of replevin is specific in purpose and limited in scope. It can only be invoked against a wrongful detention, which must exist at the time the suit is commenced. One who does not have the possession of coveted things does not detain them wrongfully and cannot be compelled to deliver them. He

is absolutely invulnerable to a suit in replevin, and the fact that the value of the thing detained may be recovered in the event it cannot be produced to satisfy the judgment does not enlarge the power of that remedy.

In the case of *Ladd v. Brewer*, 17 Kan. 204, it was said :

"A judgment for the return of certain personal property, and damages for its detention, cannot be sustained against one who is shown by the testimony neither to have possession nor to claim any right to the possession."

In the case of *Moses v. Morris*, 20 Kan. 208, a demand was made upon the sheriff for the return of property which he held under legal process. Afterward he sold the property under an order of court made in the course of the proceeding in which the process had issued, and delivered it to the purchaser. The demanding party then brought replevin against him. In determining the rights of the parties, this court said :

"On the 10th of February, 1875, when the action of replevin was commenced by the defendant in error, the plaintiff in error was not wrongfully detaining the possession of the property sued for, as he then had neither the actual nor constructive possession of the same ; neither did he have such possession conjointly with his codefendant Diffenbacker ; nor was there any joint detention by him with Diffenbacker. After the sale of January 25th, Moses had nothing whatever to do with the property, and was indifferent to it. . . .

"Without either actual or constructive possession, there is no power to deliver the property ; and in the absence of such possession, it cannot be said that a defendant *wrongfully detains* the property. He may have committed acts which make him liable in damages ; and he may be liable for the value or use of the

property in an action of another form ; but the action of replevin is not the proper remedy in such instances.''

In the case of *Davis v. Van De Mark*, 45 Kan. 130, 25 Pac. 589, the syllabus reads :

''Replevin will not lie against a person who is neither in the actual nor constructive possession of the property sought to be recovered, at the commencement of the action.''

This being the law, the judgment in favor of Sheriff Jones was undoubtedly correct. His conduct was solely that of an officer under an obligatory writ. When he sold the corn his possession of it ended and his interest in it ceased entirely. There was no mere shifting of possession for the purpose of defeating recovery, as in the case of *Schmidt v. Bender*, 39 Kan. 437, 18 Pac. 491. The principles there announced have no application, and no legal justification appears for joining the sheriff in this suit.

When the corn had been seized the plaintiff made a demand upon the sheriff for its release, and, in order that his position might not be mistaken or misconstrued, he committed it to writing. The sole basis for the demand was that the corn was exempt. When the sale took place the original attitude was maintained. The writing was again produced and read and the plaintiff's right to the corn was reasserted because it was exempt. When suit was brought, the petition itself contained some allegations upon which the claim of exemption might have been predicated. With it was filed an affidavit admitting the corn had been seized upon execution, but claiming that it was exempt. In reply to the answer of Jones, it was conceded that judgment had been rendered, execution issued and levied, and the corn sold, but it was said

that the corn was exempt.   True, it is claimed in plaintiff's brief that such a concession was not made, but this court will not now permit him to higgle over equivocal phrases for the purpose of escaping the disadvantages of a situation which he thought to be advantageous when he established himself in it.   The theory of the plaintiff's action, therefore, was that he had a right to the possession of the corn because it was exempt.   This theory is further exemplified in the reply to Houlette's answer.   There the judgment, execution, levy and sale were expressly admitted, but it was said that the corn was exempt.   True, this reply was withdrawn, and thereafter could only be used as any other written admission ; but, as the record fairly shows, it was withdrawn for the purpose of permitting an attack by demurrer to the set-off defense of the answer, to which the reply was not properly pertinent, and not for the purpose of shifting or abandoning the original theory of the case.   With the reply to Houlette's answer withdrawn, the reply to the answer of the sheriff committed the plaintiff to the exemption theory of recovery as against that defendant, and it is impossible that there should be one theory of a case for a defendant officer for selling corn under execution, and another for a defendant purchaser at such sale.   Therefore, the finding of the jury to the effect that the corn in controversy was not exempt precluded a judgment against the defendant Houlette.

The plaintiff, however, claims that the judgment upon which the execution issued was void.   Since the action was one of replevin for exempt property seized under execution, the validity of the judgment upon which the execution issued was distinctly admitted by the very form of the action.

"The requirement of the code (fourth clause of

§ 177), that the affidavit in replevin to recover the immediate possession of personal property shall state that the property sought to be replevied ' was not taken in execution on any order or judgment against said plaintiff, or for the payment of any tax, fine or amercement assessed against him, or by virtue of an order of delivery issued in an action of replevin, or any other mesne or final process issued against said plaintiff,' is imperative.    All these facts must be sworn to exist before the order of delivery can be made ; and unless they do exist *as facts* the action of replevin cannot be maintained (except in case of *exempt* property).

"The object of the statute (fourth clause, § 177, Code) is not solely to protect process in the hands of the officer to whom it is directed, and who in virtue of such *process* detains the property sought to be replevied.    One object is, by prohibiting all such ininquiry in the action of replevin, to compel the party who desires to contest the *validity* of any judgment or order of a court, or of any tax, fine, or amercement, to do so in some proper and direct proceeding for such purpose.    The law affords a proper remedy in each case—one well adapted to try the question ; but the action of replevin is not such remedy.

"An exception to the rule that property in the custody of the law cannot be replevied by the execution or attachment debtor, is made in the case of property which by statute is exempt from seizure and sale on execution or attachment; and this exception is provided for by the *fifth* clause of said § 177 of the code. But in every such case the *validity* of the judgment and execution, or order of attachment, is not questioned, but is distinctly admitted." ( *Westenberger v. Wheaton*, 8 Kan. 169.)

Seemingly, out of an abundance of caution, the defendants introduced portions of the record in the original suit between Houlette and Redinger, and probably enough to show a valid judgment. But whether sufficient for that purpose or not, so far as it

Redinger v. Jones.

went the evidence was consistent with the plaintiff's admission of the validity of the judgment which the bringing of the suit necessarily compelled, and could not, therefore, be prejudicial to him.

The plaintiff also claims that the sale of the corn was void because conducted at an improper place. Plaintiff's attorney attended this sale in his behalf. He there made but one objection to the sale about to take place.  He warned the sheriff and prospective purchasers that the corn was exempt, and nothing more.  He sued the sheriff and the purchaser upon the ground that the corn was exempt.   Upon his own estimation of his rights, it was immaterial to him where the sale was held.   Having declared his position in the beginning, and having held it until after the issues were made up and a trial was in progress, he could not then ambush his adversary by an objection to the place of sale.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration.   He is not permitted thus to mend his hold.   He is estopped from doing it by a settled principle of law.   *Gold v. Banks*, 8 Wend. (N. Y.) 562, 24 Am. Dec. 90 ; *Holbrook v. White*, 24 id. 169, 35 Am. Dec. 607 ; *Everett v. Saltus*, 15 id. 474 ; *Wright v. Reed*, 3 Durnf. & E. 554 ; *Duffy v. O'Donovan*, 46 N. Y. 223 ; *Winter v. Coit*, 7 id. 288, 57 Am. Dec. 522." (*Railway Co. v. McCarthy*, 96 U. S. 258, 267.)

This authority, among other pertinent cases, has been quoted with approval in the following decisions : *Davis v. Wakelee*, 156 U. S. 680, 690, 15 Sup. Ct. 555, 39 L. Ed. 578 ; *Davis & Rankin Bldg. & Manuf'g Co. v. Dix*, 64 Fed. (C. C.) 406, 411 ; *Tabler, Crudup & Co. v. Sheffield Land, Iron and Coal Co.*, 87 Ala. 305, 310,

6 South. 196; *Harriman v. Meyer*, 45 Ark. 37, 40; *Mc-Donald v. Hooker*, 57 id. 632, 638, 22 S. W. 655, 23 S. W. 678; *Wallace v. Minneapolis & Northern Elevator Co.*, 37 Minn. 464, 35 N. W. 268; *Wyatt v. Henderson*, 31 Ore. 48, 55, 48 Pac. 790; *Harris v. Chipman*, 9 Utah, 101, 105, 33 Pac. 242; *City of St. Louis v. Gas-light Co.*, 5 Mo. App. 484, 524; *Ballou v. Sherwood*, 32 Neb. 666, 689, 49 N. W. 790, 50 N. W. 1131; *Frenzer v. Du-frene*, 58 id. 432, 436, 78 N. W. 719. (See 9 Rose's Notes, 424.)

The evidence with reference to the existence of a mortgage lien upon the corn in suit was admitted, apparently upon the theory that if such a lien existed in good faith the plaintiff was entitled to sufficient corn to satisfy it. But the jury found the pretended lien fraudulently to have been contrived by the plaintiff for the purpose of defeating the execution creditor in the enforcement of his rights. This being true, the plaintiff could not ask for its enforcement. He cannot be permitted to build up rights upon the basis of his own fraud. The assignee of the original holder was not a party to the suit and can complain of no error committed at the trial. Therefore, it is entirely immaterial whether or not the jury were properly instructed with reference to the transfer of the note and mortgage, whether or not findings upon that subject are consistent with each other, and whether or not any such findings are unsupported by the evidence. Only those errors which affect the substantial rights of parties in a position to complain of them can work a reversal of a judgment of the district court.

The pleadings in the action were short and simple and easy to comprehend. The brief indication of the issues by the court tended to prevent any obfuscation the unexplained pleadings might cause. The special

findings show that the jury was clear regarding the material facts, and these findings were in harmony with the general verdict.  It is, therefore, impossible to conclude, from an inspection of the record, that the jury was confused or misled by the pleadings which the court permitted them to take in connection with the instructions, and the judgment entered will not be overturned on account of the conduct of the court in that respect.

On the face of the record the money judgment against the plaintiff, entered by the clerk in opposition to the verdict of the jury and without warrant in the pleadings, was invalid.  The defendant in whose favor the unauthorized judgment apparently ran has relinquished every right which it wrongfully seemed to afford him.

"An error in a judgment, in that it exceeds the amount of the verdict on which it is entered, may be cured by a *remittitur* of the excess."  (18 Encyc. Pl. & Pr. 142.)

The mistake was not called to the attention of the district court.  It could have been corrected there by motion, practically without expense.  Its commission is only one of many errors complained of here, and was not the inducement to this proceeding in error.  Therefore, the judgment will not now be reversed on account of it, and no costs will be allowed in this court because of it.

The plaintiff failed to prove a cause of action against either of the defendants Graham or Pettyjohn, even though it be conceded that they were in possession of some of the corn.  Therefore, their demurrers to the evidence were rightfully sustained, the jury was properly instructed to make no finding respecting their

rights, and judgment was properly entered in their favor.

The record is free from any material error, and the judgment of the district court is affirmed.

All the Justices concurring.