M. E. JOHNSON, *Doing Business as M. E. Johnson &
Co.*, v. D. S. HUBER.

No. 16,123.

### SYLLABUS BY THE COURT.

1. CONTRACTS—*Offer and Acceptance—Letters—Listing of Real
Estate with Agent.* A letter written by a real-estate agent
to the owner of land asking if the land was for sale and at
what price, and stating the commission the agent would charge
to procure a sale, together with the letter of the landowner in
reply, construed and held to constitute a contract authorizing
the agent to list the land for sale at a certain price and bind-
ing the owner to pay a commission in case the agent procured
a purchaser able and willing to buy at the terms stated.

2. —— *Action for Commission—Petition.* In an action to re-
cover a real-estate commission a petition which sets forth the
written correspondence of the parties showing the making of
a contract of the nature referred to in the foregoing para-
graph, and alleges that the plaintiff procured a purchaser able
and willing to take the land at the defendant's terms, but de-
fendant declined to convey the land and refused to pay the
plaintiff's commission, states a cause of action.

Error from Cowley district court; CARROLL L.
SWARTS, judge. Opinion filed July 3, 1909. Reversed.

*W. P. Hackney, J. T. Lafferty,* and *F. C. Johnson,*
for the plaintiff in error.

*J. E. Torrance,* for the defendant in error.

The opinion of the court was delivered by

PORTER, J.: This is an action to recover a commis-
sion for a sale of real estate which the plaintiff claims
he negotiated as the agent of the defendant. The plain-
tiff is a real-estate broker, and resides at Winfield,
Kan. The defendant is a resident of Iowa, and owns
land in Cowley county. The petition set out the written
correspondence between the parties which it is claimed
constituted the contract, and alleged that the plaintiff
had procured a purchaser able and willing to take the

land upon the defendant's terms, and that the defendant was unwilling to convey the land to the purchaser and refused to pay the plaintiff's commission. The court sustained a demurrer to the petition, and the only question we have to consider is whether the correspondence of the parties resulted in a contract by which the defendant authorized the plaintiff to list his land for sale and bound himself to pay the plaintiff a commission in case the latter found a purchaser ready and willing to take the land on the defendant's terms.

All of the plaintiff's letters to the defendant were written on letter-heads showing that the plaintiff was engaged in the business of real estate, loans and abstracts. The first letter was dated at Winfield, July 24, 1907. It was addressed to the defendant at Pella, Iowa, and is as follows:

"DEAR SIR—We find by the records that you are the owner of the S ½ of the SE ¼, Sec. 10-33-5. We write to know if you will sell the eighty and what is the least cash it will take to buy it.

"We charge 5 per cent. for the $1000 and 2½ per cent. all over that amount, so give us the price including the commissions.

"We often have inquiries for tracts of this size.

"Please let us hear from you by return mail, and oblige.          Yours very truly,
                                M. E. JOHNSON & CO."

The defendant replied:

                    "PELLA, IOWA, July 27, 1907, 5 P. M.
"M. E. Johnson & Co., Winfield, Kan.:

"GENTLEMEN—In reply to your letter of the 24th inst. I would say that my price on the S ½ of SE ¼ 10-33-5 Cowley county, Kansas, is $2000 net to me. I have it rented now and could not sell it without consent of parties who rent it, as to time possession could be given, etc.

"I understand this is a very nice 80, and it seems to me quite a cheap property at the figures named.
          Yours truly,          D. S. HUBER."

On August 10 the plaintiff wrote informing the de-

fendant that he had negotiated a sale of the land. His letter is as follows:

"*Mr. D. S. Huber, Pella, Iowa:*

"DEAR SIR—We have your favor of the 27th ultimo in which you state that you will take $2000 net to you for the S ½ of the SE ¼ of section 10, township 33 south, of range 5 east, Cowley county, Kansas.

"We have sold this land. You will please send us the abstract if you have one for this land, together with the enclosed deed properly executed.

"Send deed to us or the First National Bank of this city; as soon as the abstract is continued to date showing everything clear and the title is accepted by the purchaser we will send you check for the $2000.

"Trusting we may hear from you by return mail, we are,                    Yours very truly,

M. E. JOHNSON & CO."

Receiving no reply, the plaintiff, on August 22, wrote the defendant the following letter:

"*Mr. D. S. Huber, Pella, Iowa:*

"DEAR SIR—We just wired you, viz.: 'Have you executed and sent deed for land sold? If not, why?' We do not understand why you have delayed answering our communication some time ago.

"The lease and possession of the place we just sold for you does not cut any figure to our sale, and all we care for is an assignment of whatever lease you have. Send deed at once, if you have not done so.

"Please give this your immediate attention and oblige.                    Yours very truly,

M. E. JOHNSON & CO."

The defendant answered as follows:

"PELLA, IOWA, August 23, 1907.
"*M. E. Johnson & Co., Winfield, Kan.:*

"GENTLEMEN—Upon my return to my office to-day, after an absence of some time, I find on my desk an accumulation of mail matter, and in with it your communications, and I hasten to say to you just as soon as I can get to it I will give the business you refer to my attention, and let you hear from me in full.

"This is all I have any time for now.
                    Yours truly,      D. S. HUBER."

Later he again wrote the plaintiff, as follows:

"PELLA, IOWA, September 3, 1907.   11:20 A. M.

"*M. E. Johnson & Co., Winfield, Kan.:*

"GENTLEMEN—I have concluded not to sell that land at the present time. I have heard from the parties that occupy it, and they will not be willing to leave the place for some time, having moved on it and greatly improved it, with the understanding that they were to occupy it indefinitely, and also to be given an opportunity to purchase, in case they chose to do so.

Yours truly,        D. S. HUBER."

This closed the correspondence on the part of the defendant. The plaintiff later wrote other letters urging the defendant to comply with the contract and explaining that he had accepted money on payment for the land, but they have no bearing upon the question at issue.

Did this correspondence result in a contract by which the plaintiff was authorized to list the land for sale on commission? The plaintiff's first letter is susceptible of but one interpretation. In plain language it informs the defendant of the character of the plaintiff's business, inquires whether the defendant will sell the land, and asks his lowest cash terms. It states the commission which the plaintiff expects to charge in case a sale is made, and, in effect, though not in express terms, asks authority to list the land for sale. In his answer the defendant states the net price at which he holds the land for sale. The further statement that the land was rented and he could not sell without the consent of the tenant as to time possession should be given can not be construed as a statement that the land was not for sale. The fair inference is that he meant to sell it on the terms stated, subject to the lease. In other words, if the purchaser could arrange with the tenant as to the time possession should be given it would be satisfactory to him. It is alleged in the petition that the purchaser which the plaintiff procured was willing to take the land subject to the

terms of the lease, and, in the letter of August 22, which the defendant received before he refused to convey, he was informed that the matter of the lease and possession had been arranged. We have no difficulty in determining that the first letter and the reply should be construed as a contract authorizing the plaintiff to find a purchaser for the land, the price to be $2000 cash, net, provided arrangements could be made with the tenant as to time possession should be given.

This is not a suit for the specific performance of a contract to sell, and we need not inquire whether the defendant could have been compelled under the contract to convey the land. It is an action by the agent to recover from his principal compensation for services rendered in procuring a purchaser willing to take the land at the terms stated. It was a matter of indifference to the plaintiff whether the defendant saw fit to convey the land or not. As between the parties to this controversy the defendant could change his mind and conclude not to sell, but if the plaintiff in the meantime had performed the services contracted for he would be entitled to recover his commission. In neither of defendant's letters written after he was informed that the sale had been made does he repudiate the authority of the plaintiff to act for him. In his final letter refusing to convey he says: "I have concluded not to sell that land at the present time." He now makes the contention that there was no agency and no authority on the part of the plaintiff to act, and denies liability to the plaintiff for services rendered. This is inconsistent with the stand taken at the time he refused to be bound by the agreement. He is thus in the position of one who, after action has been brought against him to recover upon a contract, seeks "to mend his hold" by placing his refusal upon a wholly different ground. (Sandefur v. Hines, 69 Kan. 168, and cases cited.) Having authorized the plaintiff to procure a purchaser, he might, so far as the

plaintiff's rights are concerned, refuse to convey because he desired not to inconvenience his tenant, or for any other reason, but he could not thus avoid his liability to the plaintiff for services rendered while the contract was in force.

It is urged that there was no binding contract for the reason that in the letter upon which the plaintiff relies nothing was said as to the character of conveyance that would be made or who should furnish an abstract of title, and it is claimed that the contract which the defendant was asked to perform called for a warranty deed and abstract of title. These are all matters of detail which might have been provided for in the contract but which were not. In the absence of any provision the fair inference is that the defendant was to give a warranty deed and good title, but in any event he can take no advantage in this action of matters of this kind, for the reason that his refusal to convey was not based on any of these grounds. (*Sandefur v. Hines, supra*.) We conclude that the petition stated a cause of action and that the demurrer should have been overruled.

There is no merit in the contention of the plaintiff that the court erred in striking from the petition certain averments with respect to the legal effect of the written correspondence and the understanding which the parties had with reference thereto. The correspondence speaks for itself.

The judgment is reversed, with instructions to proceed further in accordance with the views herein expressed.