No. 19,344.

THE EMERSON-BRANTINGHAM COMPANY, *Appellee,* v.
JERRY LYONS and W. D. GWIN, Partners, etc., *Appellants.*

SYLLABUS BY THE COURT.

CONTRACTS—*Agency for Sale of Traction Engine—Breach of
Contract by Engine Company—Measure of Damages Recoverable by Agents.* A written contract between the defendant and a corporation engaged in manufacturing a gas
traction engine is construed to provide that the defendants
should be the exclusive agents for the sale of the engine in
Kansas during the life of the contract and should canvass
the state and advertise the engine; it is therefore held upon
a breach of the contract by the plaintiff that the defendants
are entitled under the allegations of their cross-petition to
recover whatever the proof may show they reasonably expended in efforts to canvass the state and advertise the
merits of the engine, including reasonable expenses incurred
in attending agricultural fairs and distributing literature
and in demonstrating the uses of the engine in field plowing
and road grading, but that they are not entitled to recover
for the value of their services in advertising and demonstrating the advantages of such traction engine, or in the
conduct of the business of selling and preparing to sell
engines.

Appeal from Douglas district court; CHARLES A.
SMART, judge. Opinion filed March 6, 1915. Reversed.

*Ord Clingman,* of Lawrence, for the appellants.

*Edgar C. Ellis, Hale H. Cook,* and *Raymond G. Barnett,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.: The district court sustained the plaintiff's demurrer to two causes of action set up by defendants in their answer and cross-petition. The defendants elected to stand upon the demurrer and have
brought the case here for review.

The cross-petition, hereinafter referred to as the

answer, alleged three causes of action upon a written contract entered into in April, 1912, between the defendants and The Gas Traction Company, a corporation, of Minnesota. The answer set forth that a short time after the contract was executed the plaintiff, an Illinois corporation, purchased all the assets of The Gas Traction Company, including the written contract which was assigned and transferred to it. It further alleged that The Gas Traction Company had been engaged in manufacturing a gas traction engine known as "Big Four 30," and that the contract provided that the defendants should become the exclusive agents for the sale of this engine throughout the state of Kansas, and should canvass the state and consistently advertise the engine; that in pursuance thereof the defendants did advertise largely throughout the state and bring to the attention of farmers, ranchmen and others the gas traction engine, attending county and state fairs during the year 1912, and distributing a large amount of literature advertising the advantages of the engine, and demonstrating the same in the field by doing a large amount of plowing and road grading at various mentioned places in the state; that as a result of these efforts several of the engines were sold in the state, and that the defendants, in connection with the advertising, demonstrating and conduct of the business of selling and preparing to sell engines, expended $2500. It was then alleged that the plaintiff, after having acquired the contract, violated its terms, and without any justification entered the state and sold engines, and appointed other agents to represent it, and prohibited the defendants from making further sales in the state; that these acts were done without the consent of the defendants and contrary to the provisions of the contract. Upon this cause of action the defendants sought to recover the amount expended by them as aforesaid in the sum of $2500.

In the second cause of action the defendants made

substantially the same allegations as in the first, and asked damages in the sum of $2500 for the value of their services in advertising and demonstrating the advantages of the "Big Four 30."

The court overruled the demurrer to the third cause of action, which alleged that the plaintiff had entered the state and sold six engines to customers of the defendants, and that it was orally agreed at the time the written contract was entered into that defendants should buy the engines for $2400 and sell them for not less than $2800. In this cause of action the defendants asked judgment for $2400. We refer to it here because the defendants seem to place some reliance upon the case of *Sparks v. Motor Co.*, 85 Kan. 29, 116 Pac. 363, in which it was held:

"The measure of damages for breach of a contract giving the plaintiff the exclusive agency for the sale of automobiles where the manufacturer invades the plaintiff's territory is the amount of commissions or discounts of which the plaintiff is deprived by sales made by the defendant." (Syl. ¶ 1.)

Inasmuch as the trial court overruled the demurrer to the cause of action for losses of profits, we do not understand how the defendants can rely upon that decision. It furnishes no support to the contention that the court erred in sustaining the demurrer as to the other two for expenses and for the value of services.

A copy of the written contract was attached to and made a part of each of the causes of action set out in the answer. The contract itself is not so broad in its terms as the defendants allege in their answer. It contains no provision which, in terms, requires the defendants to advertise the engine. It appoints them distributors for the "Big Four 30," "under the limitations and conditions herein specified, in the state of Kansas, for a period of one year beginning April 1, 1912, and ending March 31, 1913, unless previously terminated as hereinafter provided."

It provides that the distributors agree to thoroughly canvass the state "during the life of this contract and exercise their best efforts and skill to effect as many sales of said engines therein as possible."

"The distributors agree to buy from the Company, and the Company agrees to sell and deliver to the distributors on board cars at its factory in Minneapolis, Minnesota, as many of said 'Big Four 30' gasoline traction engines as the distributors are able to re-sell or may order of the Company during the life of this contract, at the prices and upon the terms following: Twenty-four hundred dollars ($2400.00) in cash for each of the first ten engines so ordered by the distributors. . . . For each of the next five engines ordered and purchased by distributors after said ten engines are purchased and paid for during the life of this contract twenty-three hundred dollars ($2300.00) in cash. . . . For each additional engine ordered and purchased in excess of fifteen engines, during the life of this contract twenty-two hundred fifty dollars ($2250.00) in cash."

There was a provision that the company was to refer all inquiries for its engines from any person within the state to the distributors, who were not to sell or deliver any of the engines purchased by them in any territory other than the state of Kansas, and were not to buy, sell or deal in any other gasoline traction engine reasonably adapted to the same uses. Another provision read:

"It is mutually agreed, that this contract may be terminated at any time either by the Company or distributors, giving thirty days notice in writing to the other of their intention so to do."

Another clause upon which plaintiff relies reads:

"It is expressly understood, that the distributors are not in any manner authorized or empowered to conduct business in the name of, or for the account of the company, or in its name or upon its behalf, to enter into any contract with third persons, nor in its name to make any promises or representations with reference to the engines, or any other matter."

The defendants rely upon the doctrine declared in the case of *United States v. Behan,* 110 U. S. 338, and contend that under that authority they have a right to recoup against the plaintiff for expenditures of money and time. The plaintiff contends that the doctrine of that case has no application here. In that case the government stopped the work being done under a contract after a large amount of material and labor had been furnished by the contractor in the revetment of a river bank. The work was done under the requirements and specifications of the government, was permanent construction, and the government received the benefit of the labor and material furnished by the contractor up to the time the work was stopped. The contractor sued for damages for the breach of the contract and was permitted to recover what he had been induced to expend on the faith of the contract, including a fair allowance for his own time and services, and it was further said that he might be permitted to recover for the loss of anticipated profits subject to the rules of law as to the character of profits which may be thus claimed.

It is the contention of the plaintiff that because the life of the contract in the present case was "short at most" and "of very uncertain duration—liable to be terminated at any time by either party upon thirty days' notice," the contract left the defendants "free to do those things most likely to produce immediate profits to themselves and entirely free to abstain from doing those things not likely to yield immediate profits to themselves." And attention is called to the clause of the contract forbidding the defendants to do or perform, in connection with their business, any act on behalf of, for, or as the agents of the plaintiff. The plaintiff would construe the contract to provide merely for the purchase of engines at fixed prices upon prescribed terms of payment, and insists that the proper construction of the contract is that the plaintiff "bound

itself only to sell and furnish engines during the life of the contract at agreed prices and to abstain from making sales directly or indirectly in the state."

It is argued that the statement in the answer that the plaintiff "prohibited these defendants from making further sales of said engine in the State of Kansas" is a mere "conclusion of law and wrong at that, for appellee could not as a matter of law prohibit appellants from selling in Kansas. Contract or no contract, they could sell their own property."

It is the opinion of the majority of the court that it was error to sustain the demurrer to the first cause of action, and that the terms of the contract as fairly construed contemplated that defendants should go to more or less expense in advertising and bringing to the attention of the public throughout the state the merits of the traction engine, and likewise by demonstrating it at county fairs and in plowing fields and in grading roads; and that the defendants are entitled to recover upon that cause of action whatever they may be able to show was reasonably expended for those purposes; further, that the trial court properly sustained the demurrer to the cause of action for the value of the defendants' services.

The judgment will be reversed and the cause remanded for further proceedings in accordance herewith.

PORTER, J. (dissenting): As I construe the contract, there is nothing in it to suggest the idea that the defendants were to do any advertising or to print or distribute circulars throughout the state, or anywhere else. There is no reference in the contract to printing or distributing advertising. The defendants were given for one year the right to sell the traction engine in the state, and they agreed to canvass the state. In consideration of their agreement to do this the gas traction company agreed to sell them engines upon certain terms which made the defendants the owners of the

engines until they resold them. They were to have a margin of $400 profit on each engine resold, but in consideration of their efforts to exploit the merits of the engine it was provided that after they had sold a certain number the price to them should be lowered so that they would make a larger profit. They were expressly prohibited from acting as the agents of the gas traction company for any purpose. The plaintiff well says that the defendants "were left by the terms of the contract entirely free to do those things most likely to produce immediate profits to themselves and entirely free to abstain from doing those things not likely to yield immediate profits to themselves." In my opinion, the judgment should be affirmed.

I am directed to say that Justices WEST and MARSHALL concur in this dissent.