Braniff v. Baier.

No. 20,897.

T. J. BRANIFF et al., *Appellees,* v. HENRY F. BAIER and CHARLES A. BAIER, *Appellants.*

SYLLABUS BY THE COURT.

1. AGENCY—*Binding Contract of Agency to Sell Land Between Owner and Broker.*   While an agreement by an owner that a broker shall have the exclusive agency to find a purchaser for his land, for a fixed time, upon certain conditions is unilateral when made, the element of mutuality is supplied when the broker accepts its performance by spending time and effort in doing the things that it was contemplated would be done by him under the agreement, and thereafter it is a binding obligation upon both.

2. SAME—*Purchaser Produced—Owner Refused to Sell—Broker Entitled to Commission.*   Where a purchaser is produced by the broker in substantial compliance with the terms of the agreement, and the owner makes no objection to the terms of the offer of purchase or the details of performance, but simply declares that he does not now desire to and will not sell his land, he is estopped, after suit is brought upon the agreement, to shift his position and defend upon objections to details that the broker might have supplied or corrected if they had been mentioned by the owner when the offer of purchase was made.

3. SAME—*Mistake in Name of Purchaser—Petition Deemed Amended.*   As the evidence shows that the name of the purchaser was other than

that-stated in the petition the pleading will be deemed to be amended so as to conform to the proof.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed June 9, 1917. Affirmed.

*Z. C. Millikin,* of Salina, for the appellants.

*C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by T. J. Braniff, G. E. Holmberg and A. Lynn against Henry F. Baier and Charles A. Baier to recover an agent's commission for procuring a purchaser for defendants' real estate. Holmberg and Lynn are the assignees of .C. W. Talmadge's interest in the commission claimed, who was associated with Braniff in the transaction. Plaintiffs were awarded judgment in the sum of $702, and the defendants appeal.

Defendants engaged the services of Braniff and Talmadge on July 1, 1913, and signed the following memorandum:

"We the undersigned H. F. Baier and C. A. Baier do hereby appoint and constitute C. W. Talmadge and T. J. Braniff, or either of them, as our only agents to sell our forty acres of farm land in Fellsmere, Florida; known as tracts No. 1232, 1233, 1260 and 1261 in township 31, range 37, in St. Lucy county, Florida; and we also hereby agree to accept from the above named agents or either of them, the actual cash we have already paid on the above mentioned contracts, plus $50.00, plus $8.00 for transferring the contracts, as full payment to us for our interest in the above named lands; the purchaser to assume all future payments. The above named contract to remain good until October 1, 1913. Dated July 1, 1913."

After this appointment was made the agents acted upon the authority by advertising the land, interviewing parties, and writing letters, and they spent considerable time and effort to find a purchaser. As a result of correspondence begun about August 1, 1913, George W. Auber, of Fellsmere, Fla., on August 25 agreed to buy the land, and he sent the following letter enclosing payment:

"Farmers National Bank, Salina, Kansas. Inclosed you will find a check for $950.00 in favor of Henry and Charles Baier for their interest in tracts south range 37, east of the Fellsmere Farms, Fla., of land

No. 1232, 1233, 1260 and 1261, township 31, said check to be given to said Henry and Chas. Baier when contracts or certificates of purchase have been properly transferred and signed by them in favor of me, George W. Auber. You will also find inclosed a check for $750 in favor of C. W. Talmadge and T. J. Braniff when said contracts are properly transferred to me and mailed and registered to my address, being Fellsmere, Florida."

About ten days before the Auber letter was written the defendants told Braniff that they did not desire to sell the land, and on August 26 they wrote a letter stating that the land was withdrawn from sale and the authority of the agents revoked as of the date of the oral notice. When defendants were informed by the agents that a purchaser had been found in accordance with the terms of their contract defendants replied that the lands were no longer for sale and that the money sent would not be accepted. The jury found, in effect, that the agents had found a purchaser and had complied with the terms of the written contract, and that the only reasons given by defendants for not complying with the contract was that the land had been withdrawn from sale and that they did not care to sell it at that time.

Defendants contend that the contract of agency was unilateral and subject to revocation at any time before a purchaser was produced. The employment or agency, it will be observed, was exclusive and for a fixed time. It is true, as defendants contend, that when the promise of one party is the consideration for the promise of another they must be obligatory upon both parties at the same time or they will not bind. The appointment or promise of defendants was unilateral when made, but when it was accepted by the agents and they had spent time, effort, and money in carrying out its provisions, there was thereafter no lack of consideration. When the agents accepted the proposal and proceeded to perform the services which the appointment contemplated were to be performed by them it became a mutual and binding obligation. As soon as the promises of the parties ripened into a contract Braniff and Talmadge became the sole agents for the sale of the defendants' land, with the exclusive right to sell it, until October 1, 1913. The defendants could not thereafter, by withdrawing the land from sale or by an attempted revocation, set aside the contract nor escape responsibility for the violation of its conditions.

In a litigation over a contract to find a purchaser for land the question was raised that the contract was unilateral. The testimony showed that after receiving the owner's proposal the broker proceeded to find a purchaser and to do the things which it was contemplated would be done by him, and it was held that such action on his part constituted an acceptance, and that thereafter the contract was a mutual and binding obligation. (*John E. DeWolf Co. v. Harvey*, 161 Wis. 535.)

In *Pullman Co. v. Meyer*, 195 Ala. 397, it was said:

"Even though an agreement is, when made, unilateral, if the party in whose favor the promise is made accepts its performance, or does 'any act in recognition of its implied or intended, though unexpressed, consideration, this supplies the element of mutuality, and gives a right of action.'" (p. 401.)

Other cases of like import are *Rowan & Co. v. Hull*, 55 W. Va. 335; *Lapham v. Flint*, 86 Minn. 376; *Schaenmann v. Whitt*, 136 Wis. 332; *Novakovich v. Union Trust Co.*, 89 Ark. 412; *Blumenthal v. Bridges*, 91 Ark. 212.

*Stensgaard v. Smith*, 43 Minn. 11, is out of line with the cited cases in this, that it appears to hold that the posting, advertising of property and the individual soliciting of purchasers did not constitute an acceptance or convert a proposal into a binding contract. That court in the later case of *Lapham v. Flint*, supra, stated that the only question before the court in the Stensgaard case was whether the contract upon its face, unaided by evidence or allegations in the complaint, expressed a mutuality of obligation, and it was held that it did not because there was nothing in the contract itself to indicate an acceptance of the obligation either in writing or by performance.

The general trend of authorities is that if the agent proceeds in good faith to comply with the terms of a proposal or agreement like the one in question by advertising the property and spending time and effort to find a purchaser these acts amount to an acceptance and thereafter both parties are bound. (Note, 19 L. R. A., n. s., 599.)

It is argued that plaintiffs were not entitled to recover because the offer of the purchaser did not comply with the conditions in the contract, insisting that the tender should have been $998, whereas only $950 was tendered by Auber. The

price, according to the contract, was "the actual cash we have already paid on the above mentioned contracts, plus $50, plus $8 for transferring the contracts." The amount "already paid" means the payments made at the time the contract was executed, and that was $900. It appears that the defendants had paid $40 additional about August 1, shortly before the sale was effected or the purchaser was found. The offer of $950 was therefore a substantial compliance with the contract as made. The transfer fees of $8 were not payable until the transfer was effected, and these the agents were able and willing to pay when they became due. So far as the $40 payment was concerned, the defendants were given credit for that sum in the award of the jury.

It is also said that the purchaser, in his letter remitting the money, did not offer or agree to assume the balance due upon the land contracts that were to be assigned. This was a stipulation to be included in the contract transferring the defendants' interest in the land, and doubtless would have been included if defendants had allowed the contract to be carried out. It was one of the mere details of the transaction, to be written into the transfer, and one which it was unnecessary to mention in the letter. This objection, like that relating to the payment made between the making of the contract and the finding of a purchaser, and the failure to include the transfer fees in the letter, was not the objection that was made when the performance of the contract was demanded. These were objections which the plaintiffs could easily have met at the time if the defendants had based their refusal upon them. Their objections were that they had taken the land off of the market, and that it was not for sale. There was little occasion for the agents to go through the form of making a tender when the defendants had refused to carry out their contract. Having put their refusal solely upon the grounds mentioned, they are estopped after the suit is brought to shift their position and defend on grounds not then relied on and which the agents might have supplied, overcome, or corrected if they had been mentioned. (*Redinger v. Jones,* 68 Kan. 627, 75 Pac. 997; *Sandefur v. Hines,* 69 Kan. 168, 76 Pac. 444; *Stanton v. Barnes,* 72 Kan. 541, 84 Pac. 116; *Johnson v. Huber,* 80 Kan. 591, 103 Pac. 99.)

The view taken by the court sufficiently answers the ob-

jections made to rulings on requested instructions, and the objections to those given. In one instruction the court told the jury that the Auber letter did not come up to the terms set forth in the agreement, but as we have seen, the absence of some of the details was not the basis of the defendants' refusal to complete the contract; and besides, the special findings of the jury showed the instruction to be without materiality. In the petition it was stated that the name of the purchaser was Piffard, whereas the proof showed that Auber was the purchaser found by the agents. This is not a material objection. No prejudice could have resulted to defendants because of the variance, and, as is often done, the petition may be regarded as amended to conform to the proof.

No material error being found in the record, the judgment is affirmed.