Russell v. Combs.

---

No. 23,007.

MARY CASEY RUSSELL and J. M. RUSSELL, *Appellants*, v. GEORGE COMBS, *Appellee.*

### SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER—*Option to Purchase Real Estate—Rights of Vendor to Cancel Executory Contract.* Where the owner of real estate, for a sufficient and valid consideration, grants a written option to purchase such property, which option is to endure for a year, and the grantee exercises the right to purchase within that time, the contract granting such option is not revocable by the grantors and they are not entitled to a decree in equity cancelling such contract.

2. AGENCY—*Valid Contract of Agency—When Principal May Not Cancel Agency.* Equity will not intrude to cancel a valid contract of exclusive agency to sell real estate, when, within the time such exclusive agency was to endure, the agent has devoted time and effort to find a purchaser and has incurred a possible liability to a third party in reliance upon the contract of agency thus accorded to him.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed February 12, 1921. Affirmed in part and reversed in part.

*F. Dumont Smith, Eustace Smith, C. M. Williams,* and *D. C. Martindell,* all of Hutchinson, for the appellants.

*F. L. Martin, John M. Martin,* and *Walter F. Jones,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a suit to cancel a written contract granting an exclusive agency to sell a hotel at a net price to the owner, and included therewith was a grant of an option to purchase the property.

The plaintiffs owned a hotel property in Hutchinson. It was covered by two mortgages, one for $16,000 and a second mortgage for $4,000. The defendant was the trusted agent of the plaintiffs and had faithfully attended to their business for a number of years. By the contract in question plaintiffs gave the defendant an exclusive agency for one year, beginning January 8, 1919, to sell the property for whatever sum he pleased so long as it produced $50,000 net to plaintiffs less the mortgage indebtedness. It also provided that the defendant should have the option to contract "said lots to purchasers in his own name or name of second party."

About five months after the execution of the contract, this suit was begun by plaintiffs to cancel it on the ground of fraud, which alleged fraud was the false representation of defendant that the holder of the second mortgage would not carry that loan but would foreclose such mortgage unless plaintiffs gave defendant an option on the hotel property at $50,000, which false representation was relied upon by plaintiffs, and that the junior mortgagee did not contemplate a foreclosure; and that the contract was without consideration.

Plaintiffs further alleged that defendant had wholly failed to advertise the property, and had wholly failed to effect a sale of it; and that the contract was a cloud on their title and prevented them from securing a renewal of either the first or second mortgages. They prayed that the contract be declared void and that it be removed as a cloud on their title.

Defendant's answer was a general denial except an admission as to the execution of the contract, and that pursuant to its terms he had immediately made efforts to sell the property. The answer further alleged that his efforts to find a purchaser had culminated, on November 3, 1919 (five months after this action was begun), in a contract for the sale of the property for $60,000 to one Walter Grundy.

Accompanying defendant's answer was a cross petition re-

Russell v. Combs.

citing the facts of defendant's contract with Grundy, and he prayed that the plaintiffs be required to furnish abstract and deed to Grundy in accordance with the contract of agency. Later, defendant dismissed his cross petition, and moved for judgment on the pleadings. The motion was denied.

A jury was waived, and the cause was tried by the court. Special findings of fact were made by the court. That feature of the contract which gave the defendant an option to purchase was cancelled, but the agency feature of the contract was upheld.

The findings, in part, read:

"1. That the defendant Combs told the plaintiff at the time the contract exhibit 'A' was signed that the bank would not renew the $4,000 second mortgage unless she would give Combs an option on said property at $50,000, and that said statement was false. Combs did not say that said mortgage would not be renewed if plaintiff did not give him the agency to sell said property.

"2. That Combs did not at any time exercise or attempt to exercise his option to purchase, and the option to purchase was withdrawn by the plaintiff.

"3. That the plaintiff was able to pay said second mortgage and did pay it in June, 1919, and plaintiff was not injured by said statement; that the bank was willing to carry the mortgages.

.    .    .    .    .    .    .    .    .    .    .    .

"8. That Combs' services for seven years as agent for plaintiff and the satisfactory manner in which he had attended to plaintiff's business, and her confidence in Combs, and her willingness to sell said property for $50,000, net to her, were the causes that induced plaintiff to execute said contract and Combs' statement as to renewal of mortgage was not what induced plaintiff to sign the contract.

"9. That in February, 1919, the defendant, George Combs, told Ed McNaghten he, Combs, would give McNaghten $2,000 if he would sell the property in question for $60,000. McNaghten, in April, 1919, began trying to sell said property to Walter Grundy and continued his efforts until November 3, 1919, at which time he did sell said property to Walter Grundy and others for $60,000.    .    .    .

"10. That the plaintiff did not make any attempt to rescind the contract in evidence as exhibit 'A' until after Combs had made the said arrangement to pay $2,000 to sell said property for $60,000 and until after McNaghten had begun to try to sell to Grundy.

## "CONCLUSIONS OF LAW.

.    .    .    .    .    .    .    .    .    .    .    .

"2. That as the false statement made by Combs was not the inducing cause of the execution of said contract by plaintiff, and as plaintiff

was able to pay said mortgage and did pay it, and as plaintiff was not damaged by said false statement, said statement is not sufficient to warrant the revocation of said agency and said agency was not procured by fraud, and Combs was not guilty of neglect or misconduct as agent that warrants a revocation.

"Said statement is not a statement of material fact, and does not amount to fraud because it was not the inducing cause of signing said contract.

"3. That while as a general rule of law a principal may revoke an agency, in this case, before any attempt was made to revoke the agency, Combs had made an agreement to pay McNaghten $2,000 for selling said property for $60,000, and Combs having made such effort and having become liable to pay McNaghten $2,000 if he made the sale, the agency could not then be revoked unless the agency had been procured by fraud, or for misconduct of the agent.

.      .      .      .      .      .      .      .      .      .      .      .      .

"5. That plaintiff had a legal right to revoke Combs option to purchase said property, and Combs' option to purchase was revoked by plaintiff.

"6. That the plaintiff is not entitled to judgment rescinding and revoking said agency."

Both parties appeal. Plaintiffs contend that the court should have cancelled the whole contract. Defendant as stoutly contends that it was error to cancel any part of it.

Since the trial court found the fact to be that the option was not procured by fraud, and that the false statement of defendant was not the inducing cause of the contract and wrought plaintiffs no harm, the option could not be cancelled for that reason. The court, however, did cancel the option because it had not been exercised. But the time to exercise the option had not expired, when, in November, 1919, the defendant and Grundy and their associates closed a deal for the purchase of the property pursuant to such option. The option reads:

"Second party having the authority to contract said lots to purchasers in his own name or name of second party."

The option was to endure for twelve months, until January 8, 1920, and as there appears to have been sufficient consideration for it, it was binding on the plaintiffs and they were not entitled to have it cancelled. (*Brick Co. v. Bailey,* 76 Kan. 42, 48, 90 Pac. 803; *Watkins v. Robertson,* 105 Va. 269, 115 A. S. R. 880; *Pollock v. Brookover,* 60 W. Va. 75, 6 L. R. A.,

n. s., 403, and note; *Frank v. Stratford-Handcock*, 13 Wyo. 37, 67 L. R. A., 571; 6 R. C. L., 604.)

It seems, therefore, that so much of the judgment as decreed a cancellation of the option to purchase was erroneous and should be set aside.

Touching the trial court's refusal to cancel the agency, the court recognized the principle for which appellant contends, "that as a general rule of law a principal may revoke an agency," being, of course, amenable to damages (2 C. J. 529, 534) or compensation for the agent's expenses before such revocation. (*Emerson-Brantingham Co. v. Lyons*, 94 Kan. 567, 572, 147 Pac. 58.) But here the aid of a court of equity was asked to cancel a valid contract of agency under which the defendant had devoted time and effort and had incurred possible liability to a third party. Equity often refuses to enforce valid contracts where damages will give an adequate legal remedy; but the cases are rare—and certainly not authoritative—where equity has deliberately interfered with and cancelled valid contracts. In *Braniff v. Baier*, 101 Kan. 117, 165 Pac. 816, the owners of forty acres of Florida land gave a contract of exclusive agency for three months to sell the land. Pursuant thereto the agents commenced efforts to sell the land; they advertised it, interviewed prospective purchasers, wrote letters, and gave time and effort to that end. Shortly before the agents succeeded in closing a deal with a purchaser, the owners decided to withdraw the land from sale, and revoked the agency. But this court held that the owners could not set aside the contract nor escape its responsibilities under such circumstances. It was there said:

"The general trend of authorities is that if the agent proceeds in good faith to comply with the terms of a proposal or agreement like the one in question by advertising the property and spending time and effort to find a purchaser these acts amount to an acceptance and thereafter both parties are bound. (Note, 19 L. R. A., n. s., 599.)" (p. 120.)

It follows that so much of the judgment as decreed cancellation of the option to purchase should be set aside, and judgment on that phase of the matter should be directed to be entered in favor of defendant. That part of the judgment which denied cancellation of the contract of agency should be affirmed.

It is so ordered.