No. 30,052.

H. B. FIRESTONE, *Appellee*, v. WILLIAM E. JARVIS and E. O. LUTHER et al., *Appellants*.

(1 P. [2d] 250.)

Opinion filed July 3, 1931.

*Lester Luther,* of Cimarron, for the appellants.

*Albert Watkins* and *Arthur C. Scates,* both of Dodge City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: William E. Jarvis, Martin O. Jarvis and Lilly Hutchings were joint owners of a tract of land, and W. E. Jarvis, who represented the other owners, had placed the sale of the land with two different brokers, H. B. Firestone, and F. M. Luther & Sons. The price of the land was fixed at $2,500 net to the owners. Negotiations for the sale of the tract were begun on June 17, 1929, with the plaintiff, Firestone, who had concluded to buy it for himself, and on June 24, 1929, he wrote Jarvis that he would buy the land for $2,500 on terms stated, namely, $100 cash, $700 when good title was shown by an abstract, and $1,700 on or before August 15, 1929. He also stated that the abstract should be brought down to date and a deed be executed and sent to a certain bank in Cimarron to be delivered on compliance with the terms of payment. On June 26 Jarvis wrote to Firestone accepting the offer, saying that the

necessary papers would be forwarded as soon as possible, that the deed was to be signed by one of the owners then living in South Dakota, and that a few days would be necessary to obtain that signature, and that the abstract would be mailed in a few days.

F. M. Luther & Sons had been looking for a purchaser for the tract, and on June 8, 1929, wrote Jarvis stating that they believed they had a prospective purchaser, and asking about the price. On June 10, 1929, Jarvis answered saying his price was "$2,500 net to us." On June 24, 1929, F. M. Luther & Sons wrote that they had an offer of $2,250 for the land and asked Jarvis to wire the answer. Jarvis wired that he was still holding out for $2,500 cash. That wire was received by Luther & Sons on June 26, at 8:30 a. m. The prospective purchaser mentioned was E. Luther, who was not related in any way to the brokers of that name, and he immediately told the brokers that he would take the land at $2,500 and he paid F. M. Luther & Sons $200 cash as part payment. On June 26, at 9:30, the brokers wired Jarvis: "Have closed deal at $2,500 cash as per your telegram just received. Am mailing check with instructions." F. M. Luther & Sons immediately wrote a letter to Jarvis confirming the above telegram and inclosing therein the check for $200, which was returned to them by Jarvis on June 28. Jarvis, it appears, lived in the country several miles from the station and the telegram from Luther & Sons was telephoned to him about 10 o'clock a. m. on the 26th, and while he was at the telephone receiving the telegram, his daughter placed upon the table the letter of Firestone, already mentioned, which had just been delivered by a rural carrier, stating that he would take the land. On the same day and at about 4:30 p. m. Jarvis wrote Firestone that he would accept the offer. About the same time he wrote F. M. Luther & Sons that the land had been sold previous to their offer and that he would return their check whenever it arrived. Defendant appeals.

While Jarvis proceeded upon the theory that he had sold the land to Firestone, he and his coöwners hesitated to convey the land because of the adverse claim of Luther that the land had been sold to him and that he was entitled to a conveyance. Firestone was claiming a conveyance under the sale to him and this action was brought by Firestone to require the execution of a conveyance of the land under his purchase, and that Luther be enjoined from setting up any right or interest in the land. Luther's answer was that he was the

purchaser of the land under a contract made with Jarvis and he asked that Jarvis and his coöwners be required to convey the land to him, and further that Firestone be barred and excluded from asserting any title, right or claim to the land. Jarvis answered for the owners and himself alleging that they were ready and able to make the conveyance to whomsoever was determined by the court to be the actual purchaser. They asked the court to adjudicate the controversy as between the two claimants and determine which of them was entitled to a conveyance.

The case was submitted upon an agreed statement of facts, most of which were embraced in letters and telegrams which passed between the parties, and upon these facts the court determined that Firestone was entitled to a conveyance of the land, and further adjudged that Luther had no right, title or interest in it. In his appeal Luther contends that he had accepted the terms proposed by Jarvis, that his acceptance was prior in point of time to the purchase by Firestone, and therefore he was entitled to a decree for a specific performance of the contract, and that Firestone should be left to his remedy for damages from the owners. The transaction with defendant, Luther, did not amount to a contract for the sale of the land to him. It may be noted that his brokers had never disclosed to Jarvis the name of the proposed purchaser. They did state that they had closed a deal at a price of $2,500 and added that they were mailing a check with instructions. What the instructions referred to was not stated. Aside from the fact that the name of the purchaser was not disclosed, the price, $2,500, was not sent, but only a check for $200 from some one unknown to the owners, who were in the dark as to the responsibility of the stranger. The check was presumably intended as earnest money, but the details as to the closing of the transaction, such as the making and delivery of the deed, the requirement of an abstract of title and where and when the balance of the price was to be paid before the delivery of a deed should be made, were not agreed to. Was the deed to be placed in escrow in some bank as well as the purchase money? These were questions of importance to the owners, who resided a considerable distance away from the location of the land. Perhaps the promised instructions included some of these details as to the completion of a contract, but what they were is not shown. Whatever they were they necessarily introduced new elements, and the conditions included in the instructions prescribed by the undisclosed Luther have

never been agreed to by the owners. It is obvious that a completed contract was never made between Luther and the owners. Where there are unsettled conditions, to be agreed upon by the owner and purchaser, there is no binding contract to be specifically enforced. (*Bentz v. Eubanks,* 41 Kan. 28, 20 Pac. 505; *Spiher v. Johnson,* 110 Kan. 339, 203 Pac. 696; *Wing v. Mollett,* 115 Kan. 116, 222 Pac. 88; *Nichols v. Coppock,* 124 Kan. 652, 261 Pac. 574.) Again, the brokers themselves were not authorized to make a binding contract for the sale of the land. The extent of their authority was to find a purchaser willing to buy the land on terms prescribed by the owner. A mere employment of the broker by the owner with a direction to sell the land without more is not authority to the broker to make a binding contract of sale under which the owner may be compelled to convey the land to the purchaser. (*Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267; *Orr v. Rieger,* ante, p. 558, 300 Pac. 1074, just decided.) In the latter case the rule is succinctly stated as follows:

"Written authority given to a real-estate broker to sell land does not authorize the broker to make a contract with the purchaser obligating the principal to convey to the purchaser." (Syl. ¶ 1.)

There the owner, Rieger, lived in a remote city and had dealings with Baker, a broker. Baker telegraphed the owner that he had a prospective purchaser, the name of whom was not disclosed. The owner then sent Baker a telegram saying: "Sell at once, $800 cash to me clear, advise," and the question raised in the case by the purchaser was: "May the appellant in this case (the purchaser), as the undisclosed purchaser, maintain this action against appellee (the owner) for the specific performance of his agreement to sell the land," and this court responded: "Rieger made no agreement to sell the land, in the sense of the question. His telegram to Baker to sell for $800 net cash merely fixed the terms on which Baker might negotiate with the prospective purchaser." It was accordingly held that the negotiation with the broker did not obligate the owner to convey the land to the proposed purchaser.

If this had been an action by the brokers against the owner to recover a commission upon the ground that they had procured a purchaser other questions would have been involved and they would have been in a stronger position than is Luther, the undisclosed purchaser in this action. It appears in the agreed facts that the brokers are making no claim for commission against Jarvis.

In behalf of Luther it is urged that when Jarvis declined to make

a conveyance the only objection he mentioned was that he had sold the land to another. Jarvis wrote the brokers:

"I am writing to inform you that SW¼, 32-23-28, Finney county, has been sold previous to your offer of $2,500 and it will therefore be necessary for me to return your check whenever it arrives, as you wired to-day that you were sending a check."

The contention is that having stated that ground no other defense could be interposed and that to do so would be the mending of his hold. The rule invoked is not applicable here. Under the agreed facts one of the questions was whether Luther had a completed contract with Jarvis for the purchase of the land, and he is claiming that an enforceable contract had been made which should be specifically performed. It has been determined that an enforceable contract with him had not been made, and hence there was no basis for his claim. In *McCarter v. Rogers,* 104 Kan. 204, 178 Pac. 62, where it was claimed that certain correspondence relating to the sale of land between parties had resulted in a binding contract, it was contended that the owner in the defense made was attempting to mend his hold. In holding that a binding contract had not been made, it was said:

"For the same reason, plaintiff's contention that the defendant should not be permitted to mend his hold and rely at the trial upon a different ground for refusing to convey from that stated in his second letter is not sound. The rule stated in *Redinger v. Jones,* 68 Kan. 627, 75 Pac. 997, followed in *Stanton v. Barnes,* 72 Kan. 541, 84 Pac. 116; *Paul Co. v. Shaw,* 86 Kan. 136, 119 Pac. 546, and in *Braniff v. Baier,* 101 Kan. 117, 165 Pac. 816, cannot apply, for the reason that it made no difference what actuated the defendant in refusing to convey, since there was no contract in existence binding him to convey." (p. 205.)

It sufficiently appears that a binding contract was made by the owner with Firestone and hence the trial court was justified in rendering judgment in his favor.

The judgment is affirmed.