Quinton v. Mulvane.

MARY K. QUINTON v. JOHN R. MULVANE.

No. 14,116.    (81 Pac. 486.)

SYLLABUS BY THE COURT.

CONTRACTS—*Optional and Unilateral—Validity.* A written contract, by the terms of which M. undertakes to pay Q. a sum of money at a stated time in consideration of the conveyance by Q. and her husband of certain real estate to the Amusement Syndicate Company, subject to a lease and to a note and mortgage, "the same being a first lien upon the property conveyed, the Amusement Syndicate Company assuming and agreeing to pay the same," is not, on its face, an unenforceable contract.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed July 7, 1905. Reversed.

*A. B. Quinton, E. S. Quinton,* and *M. T. Campbell,* for plaintiff in error.

*Garver & Larimer, Mulvane & Gault,* and *Frank Doster,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: The plaintiff in error brought an action in the district court of Shawnee county against John R. Mulvane, and in her petition alleged "that on or about the 17th day of February, 1903, she and the defendant, by and through C. E. Gault, who was the defendant's duly authorized agent for that purpose, entered into a written contract, which was then duly executed by them," by the terms of which, in consideration of the conveyance by the plaintiff and her husband to the Amusement Syndicate Company of three lots in the city of Topeka, subject to a certain lease, and to a note and mortgage, which the amusement company was to assume and pay, the defendant agreed to pay the plaintiff $20,000. She further alleged that immediately thereafter she and her husband, in compliance with the contract, conveyed the lots therein described by executing and delivering to the Amusement Syndicate Company a deed thereto, which was then tendered and delivered to the defendant, and that she had fully complied with all the conditions of the contract on her part. She further alleged that, on demand, the defendant neglected and refused to pay the money contracted to be paid, or any part thereof, and she claimed judgment for the amount, with interest.

On the trial of the case, which was had without a jury, the court, after hearing a mass of evidence as to the circumstances that led up to the making and signing of the contract, and as to what occurred thereafter between the parties in relation thereto, rendered judgment in favor of the defendant for costs, and also filed a written opinion for the purpose, as it says, of informing this court as to the grounds upon which it acted, in case its judgment should be brought here for review. The opinion disclaimed any decision upon the evidence. Among other things the court said:

"It is contended on behalf of the defendant that this

is not such a contract as can be enforced, even if its
execution be admitted; and this is the proposition upon
which the court proposes to decide the case—whether
the contract before us is one that can be enforced."

After some argument upon this proposition the
opinion continued:

"The court is of the opinion, therefore, that this
contract cannot be enforced; that it is not uncertain
or ambiguous, and that it cannot be contradicted or
varied by parol testimony."

This is an action upon an optional contract to sell
and convey certain land for a definite price. It is
alleged that the option had been accepted and a con-
veyance tendered by the plaintiff. The case of *John-
son v. Furnish*, 29 Kan. 523, is quite similar to this,
except it was not upon an optional contract, and was
to compel the conveyance of land instead of the pay-
ment of the contract price. In that case Johnson con-
tracted, through an agent, to sell a tract of land to
Furnish, who, by an arrangement with Sperry, di-
rected the deed to be made to the latter, Johnson not
knowing the name of the purchaser. Sperry, before
the transaction was closed, refused to carry out his
arrangement with Furnish, and the latter thereupon
tendered the purchase-price and demanded a deed
from Johnson to himself. Johnson, suspecting fraud,
refused to convey to Furnish, who then brought suit.
Mr. Justice Brewer, delivering the opinion of the
court, said:

"Again, the contract was no fraud upon Johnson;
neither was there any imposition upon him in direct-
ing the deed to Luther Sperry. It was nothing to him
as to who should be named as grantee in the deed.
All that he had a right to insist upon was the $475 in
cash, and whether the purchaser wanted the deed
made to himself, his wife, a child, or a stranger, was
a matter which in no manner concerned the vendor,
and gave him no ground of complaint." (Page 526.)

Let us assume, as did the court below, that the

44—71 KAN.

agreement was executed. Mulvane directed the conveyance named in the contract, and presumably had an understanding with the amusement company when he contracted to have the conveyance made to it. If he had no such understanding, or if, having it, the amusement company refused to carry it out, was no concern of the vendor. Mulvane could have substituted some one else or could have taken the conveyance to himself, and Mrs. Quinton would have been compelled to make the conveyance or relinquish the sale. She could not have claimed a breach of the contract if Mulvane had consented to have the conveyance made to any one whomsoever. If she had tendered performance in accordance with the terms of the contract, and Mulvane had refused to accept it only because the amusement company declined to enter into the transaction, it would have been optional with her to sue for damages for the breach of the contract or for its specific performance.

The defendant insists, and the court below found, that this contract is not ambiguous. If so, it should be enforced. It is contended that the word "convey" in the contract means "to pass title." This may sometimes be true, but generally where one agrees to convey land on the payment of money the word "convey" is to be construed as meaning the making and delivery of a deed. The grantor does all that is possible for him to do when he makes, and tenders the delivery of, a deed.

If this contract was executed, as alleged, it does not expressly obligate Mrs. Quinton to make the conveyance, but says "in consideration of Mary E. Quinton and E. S. Quinton's conveying to the Amusement Syndicate Company, . . . I agree to pay." From this it is argued that the contract is void for want of mutuality, and the case of *Railway Co. v. Bagley*, 60 Kan. 424, 56 Pac. 759, and other decisions of this court are cited as authority. We do not think these decisions

are applicable.   The  distinction  in  each  case  is  evident.   The  case  of  *Chadsey v. Condley*, 62 Kan. 853, 62 Pac. 663, is very much more analogous.   The syllabus in that case reads:

"An optional  agreement  to  sell  and  convey  land, signed by the owner alone, although unilateral at its inception, becomes absolute and mutually binding on both parties if the option be accepted by the vendee within the time and on the terms specified; and such an agreement will be specifically enforced, if fairly made and for a sufficient consideration."

In other  words  the  contract  becomes  absolute  and mutually binding when the party upon whom rests the option accepts it and tenders performance.   An option to sell rests upon the same basis as an option to buy.

A mere offer or a promise to buy or to sell, if not repugnant to the statute of frauds, and if accepted before revocation, may become a binding contract.   (*Ide v. Leiser*, 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695.)

The judgment of the district court is reversed, and a new trial granted.

All the Justices concurring.