No. 32,207

O. E. ROLANDER et al., *Appellees*, v. J. L. SANDERSON et al.,
*Appellants*.

(43 P. 2d 1061)

Opinion
filed May 4, 1935.

*James A. Cassler*, of McPherson, and *W. T. Roche*, of Clay Center, for the
appellants.

*J. Rodney Rhoades, George R. Lehmberg* and *John K. Brandon*, all of
McPherson, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to cancel an oil lease made July
9, 1931, by Oscar Rolander to H. C. Finefrock, and to quiet the title
to the leased premises. The lessor died in August, 1932, and plain-
tiffs are his heirs. The defendants are assignees claiming under
Finefrock.

Omitting formal allegations, as well as those pertaining to heir-
ship of Rolander and assignment by Finefrock, the petition alleged
the execution of the lease, a copy of which is attached to the petition
and to which reference is hereinafter made, and that no oil or gas
is being produced from the leased premises; that the lease has ex-
pired by its terms, and plaintiffs are entitled to have it canceled and
discharged of record. In a second cause of action it was alleged
defendants claim some right, title and interest by reason of the lease,
the exact nature being unknown to plaintiffs, etc., and which con-

stitutes a cloud on plaintiffs' title; that plaintiffs' title is paramount and superior to defendants' title, and asking that title be quieted in plaintiffs.

Defendants answered admitting the historical matters pleaded and pleading the provision of the lease relating to rental, hereinafter quoted, and alleging payment of rents for 1932 and 1933 and tender of rents prior to March 9, 1934, which last tender plaintiffs refused; that defendants have complied with all terms and provisions of the lease and the same is in full force and effect. Further tender of $40 for the year 1934 is pleaded.

To this answer the plaintiffs demurred, which demurrer the court sustained, and rendered judgment canceling the lease and quieting plaintiffs' title. Defendants appeal.

The lease was dated July 9, 1931, and provided it should remain in force "for a term of one year from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

Provision is made for share of oil and gas produced and saved and—

"If no well be commenced on said land on or before the ninth day of March, 1932, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Peoples State Bank at McPherson, Kansas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of forty no-100 dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well twelve months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable, as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

It seems to have been conceded, in addition to the admissions made by the demurrer, that there had never been any drilling on the leased premises, and that plaintiffs had given no notice to defendants that rents would not be accepted on March 9, 1934.

In ruling on the demurrer the trial court said:

"It is the opinion of the court that the mineral lease must terminate some time and the terminal date was set in the lease by the parties thereto at March 9, 1932. After that date it became optional with the landowner whether or not he did accept further payments and thus renew the lease from year to year. He did accept such payment which did renew the lease for one year, but with his refusal to accept another payment the lease expired by its own terms.

"This is not a forfeiture of lease; it is merely the refusal to renew the lease. The two are quite different and no notice on the part of the landowner is required."

In support of the trial court's judgment, appellee argues that the lease is for a primary term of one year and as long thereafter as oil or gas is produced, etc., and there being no production, the lease ended one year from its date of July 9, 1931, citing in support authorities holding that if the time for termination of a lease is fixed therein the term will not be extended beyond the time thus fixed. (1 Willis' Thornton on Oil & Gas, 5th ed., p. 391, and 40 C. J. 1058 and some of the cases cited therein.) Let us observe the effect of that rule as applied to the facts here. It must be noted that while the lease at one place fixes the term at one year, at a later place it provides that if no well be commenced on or before March 9 of the following year, or eight months after date of the lease, the lease shall terminate as to both parties unless certain rentals are paid, and that successive payments could thereafter be made. Reading the whole lease, it is apparent that had no well been drilled and no rental paid before March 9, 1932, the lease would then and there have terminated; if a producing well had been drilled, the term would have been "as long thereafter as oil or gas . . . is produced . . ."; if no well had been drilled and rental had been timely paid it would have terminated March 9, 1933, unless further extended by additional payment of rents. It is likewise quite apparent that under no circumstances could this lease have terminated July 9, 1932. It either terminated March 9, 1932, or on March 9 of a later year, dependent upon payment of rent. Whatever might be the rule where a longer term than one year is fixed, under the facts of this case the lease by its own terms did not terminate in one year. Although it was said in *Baldwin v. Oil Co.*, 106 Kan. 848, 850, 189 Pac. 920:

"By paying the rent provided in the leases, the lessee could neglect to drill until the leases expired, but the lessee, if he failed to produce oil or gas from the lands, could not, by paying rent, extend the leases one day beyond the time fixed for their expiration nor could excuses for nonperformance extend the leases beyond that time,"

it cannot avail plaintiffs here. In that case, the lease was for three years, and about fifty days before termination drilling operations were started, excuses being offered for failure to perform. The lessees sought to avoid forfeiture on the ground of inadequate water supply, muddy roads, etc. The question of effect of tender of cash rentals was not presented to this court and what is said concerning

the same was beyond the issue, even though it be conceded to be a correct statement of an abstract principle of law. And for reasons heretofore mentioned, the rule could hardly apply here.

The lessors accepted rentals for two successive years. If the lease was ambiguous by reason of the different termination dates, the parties, by their action, put their own interpretation on it. It was held in *Brick Co. v. Bailey*, 76 Kan. 42, 90 Pac. 803:

"Such contract is not void for want of mutuality. It is of the essence of an option contract that it is not mutual. The purchaser pays his money or does what he agrees to do for the privilege of choosing whether or not he will perform or claim performance of the contract, and for the consideration received the seller parts with his right of choice.

"Where certain terms of a contract are ambiguous, but such terms have been construed and acted upon by the parties interested, such construction will be adopted, even though the language used may more strongly suggest another construction.

"The amount paid at the execution of the contract and the rental thereafter paid constitute a sufficient consideration to support the contract in its entirety." (Syl. ¶¶ 2, 3, 4.)

And see Summers on Oil and Gas, § 119, p. 383.

It is not necessary to review cases holding that a lessee cannot indefinitely avoid development of the lease, for that is not complained of here.

It is said in 2 Willis' Thornton on Oil and Gas, 5th ed., § 279:

"A lessor may have a cancellation of his oil and gas lease if he refuse to accept the rentals when due, notify the lessee that he will no longer accept the rentals, and permit his land to remain idle and undeveloped, and that he will require the lessee to execute the lease contract according to the intention of the parties by beginning in good faith the sinking of a well. But no cancellation can be had until the lessor gives such notice and the lessee fails after reasonable time to begin such development." (p. 524.)

The case of *New American Oil, etc., Co. v. Troyer*, 166 Ind. 402, 76 N. E. 253, involved a gas lease which required the lessee to pay a quarterly rental in advance for delay beyond a stated period in drilling a well. The lessor accepted five quarterly payments of rental without protesting at the delay in drilling the well. It was held that his action in commencing suit for the forfeiture of the contract for failure to sooner drill the well only ten days after the expiration of the last quarter for which rent was paid, without previously giving notice to the lessee and a reasonable time to drill the well, was inequitable, and would not be sustained. The court there said:

"Under a contract of this sort parties must act fairly with each other. The landowner must be given a fair opportunity to compel such timely operations as will preserve the underlying oil and gas, and prevent its being mined through wells on other premises. While, on the other hand, he will not be permitted to take advantage of delays that have been reasonably induced by his own conduct and force a forfeiture for nonperformance. The operator must have a fair chance to perform his contract. (Citing cases.) He has not had a fair chance in this case. If appellees, when they accepted the advanced payment on March 10th, or at some other reasonable time, had given appellants notice that they must drill a well within that quarter, and that no further extension of time would be granted, then we should have quite a different question. This suit, however, is brought and prosecuted upon the theory that the failure of appellants to drill a well within the paid period put an end to their rights to drill one at all. This view is erroneous. The peculiar character of the contract, and the conduct of the parties while acting under it, are such, we have seen, as make an action without notice and reasonable time to perform, inequitable and unsustainable. The judgment is therefore reversed, with instructions to sustain the motion for a new trial." (p. 407.)

The case relied upon by appellees is *American, etc., Glass Co., v. Indiana, etc., Co.,* 37 Ind. App. 439, 76 N. E. 1006, where an oil and gas lease gave the lessee a right to explore the land for oil and gas for a period of twelve years and so long thereafter as oil or gas should be produced, and provided for the payment of annual rentals. It was held that the acceptance of an annual payment after the expiration of the twelve-year period, and the execution of a receipt stating that the payment continued the lease in force for another term, did not extend the lease for an additional term of twelve years, but did constitute a waiver of the right to claim a forfeiture at the end of the twelve-year period, so as to entitle the lessee to notice and a reasonable time thereafter to comply with the terms of the lease before forfeiture.

Appellees direct attention to the difference in time between the primary term in that lease and the one in the case at bar. However, it matters little that in the above-cited case the term was twelve years, while in the present case it was only one year. The twelve-year term had expired and the lease was continued by payment of rental which was held not to extend it for another twelve-year period but to constitute a waiver by landowners of the definite time of termination therein fixed. It was therefore a waiver of their right to claim a forfeiture of the lease at the end of the twelve-year period and effective to require notice to the lessee and a reasonable time thereafter to comply with the terms of the lease before for-

feiture. It seems that such holding supports appellants' contention rather than that of the appellees, and should apply to the case at bar, as this lease provided for extension beyond the primary term upon exercise of the rental option, and that therefore lessees were entitled to notice and a reasonable time for development thereafter before forfeiture of the lease.

It is noted the trial court concluded the lease terminated March 9, 1932, and the payment of rentals was in effect a renewal of the lease which the landowners had a right to refuse. Whether the first conclusion is right or not, it fails to give any effect whatever to the termination date as fixed in the first portion of the lease. Assuming correctness of the conclusion that payment of rentals amounts only to a renewal of the lease, we are of opinion that after having accepted rentals for two years, it would be inequitable to permit the lessors, without having given any reasonable notice of their intention so to do, to refuse to accept subsequent rentals timely tendered. Had such notice been given, lessees would have had an opportunity to commence drilling to develop the lease so as to determine whether it could be kept in effect by the production of oil or gas as provided in the lease.

We conclude the trial court erred in canceling the lease and quieting plaintiffs' title, and the judgment of the lower court is therefore reversed.