No. 35,066

CHARLES O. KILMER, doing business as THE KAW PAVING COMPANY, *Appellee,* v. THE VICTORY SAND & STONE COMPANY, *Appellant.*

(110 P. 2d 798)

Opinion filed March 8, 1941.

*Oscar Raines, Ralph F. Glenn* and *Wendell Garlinghouse,* all of Topeka, for the appellant.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages growing out of a breach of a written lease. The plaintiff recovered, and defendant appeals.

At the trial the defendant by appropriate demurrers and motions raised the questions now presented: (1) That the lease was void on its face for want of consideration and lack of mutuality. (2) That the lease was void and unenforceable for indefiniteness and uncertainty in describing the property. (3) That the lease had been canceled by mutual agreement between the defendant and plaintiff's assignor, and (4) That the evidence does not support the judgment.

Briefly stated, plaintiff's petition alleged that in 1932 the defendant entered into a written lease with one Carswell, whereby certain lands were leased on which an asphalt plant was to be erected; that the plant was erected; that by subsequent assignments plaintiff became the owner of the lease, plant and equipment on November 8, 1937, and remained in possession until about January 27, 1938; that plaintiff had certain paving contracts with the city of Topeka, and was prevented by defendant from operating the asphalt plant and using the leased premises, because of defendant's construction of a railroad spur track which made it impossible for plaintiff to have access to the asphalt plant, and on account thereof, plaintiff was compelled to move his asphalt plant to another location. He sought to recover his actual expenses in removing the plant, damages for loss of use of the leased premises and punitive damages.

Briefly stated, defendant's amended answer alleged that defendant attempted to coöperate with plaintiff in operating the asphalt plant and that plaintiff moved it of his own volition; that the lease had been canceled by mutual agreement of defendant and plaintiff's predecessor and assignor; that the lease was void for want of consideration; that the consideration was grossly inadequate and the description contained in the lease was too indefinite and uncertain to make the same a valid lease. Plaintiff's reply need not be noted.

The lease, a copy of which was attached to the petition, and the

execution of which was admitted by the answer, was made December 27, 1932, between the defendant and Frank Carswell, and recited that defendant in the operation of a sand plant occupied certain undescribed real estate near the city of Topeka, and desired to lease a part thereof to Carswell for the purpose of erecting and operating an asphalt plant. The lease then stated that in consideration of the sum of one dollar, receipt of which was acknowledged, and the other mutual covenants and considerations contained, the parties agreed that defendant leased to Carswell—

"A part of the premises hereinbefore referred to adjoining the railroad spur at the sand plant of first party (defendant), also hereinbefore referred to, beginning at a point 125 feet west of the present sand and gravel bins of first party and extending west for a distance of 150 feet and north for a distance of 100 feet;" second party (Carswell) "shall have free access to the plant site herein provided for, so at all times to permit the successful operation of an asphalt plant, and truck hauling to and from such asphalt plant shall have immediate access to the main road outlet of first party."

Other agreements were that defendant was to furnish Carswell electric power to be metered and paid for at same rate paid by defendant; that defendant was to permit Carswell to use part of a certain spur track and if he deemed necessary to install an additional spur track. During the term of the lease defendant agreed to furnish sand and gravel to Carswell at stipulated prices. It may here be stated, there was no agreement that Carswell must purchase what sand and gravel he needed, or any other amount, from defendant. Carswell agreed to pay the taxes on all the asphalt plant equipment. Permission was granted to Carswell to assign the contract and lease. It may here be stated there was no reservation or provision giving Carswell any right to an extension of the lease, nor to remove the plant at the expiration of the lease.

Appellant's contention that the contract lacked mutuality and was therefore unenforceable by Carswell and his assignees is predicated entirely on the proposition that appellant was compelled to sell sand and gravel to the other party, but the other party was not compelled to buy from appellant. We need not discuss the soundness of any such contention, for it ignores other provisions of the contract. Carswell was to build a plant on the leased premises, and it is admitted that he did so. He was to pay the taxes on the asphalt plant equipment and it is not disclosed but that he did. Whatever merit there might have been to appellant's contention had the contract remained in an executory status, the situation changed

here, for the contract was executed. In that state of affairs, the rule that lack of mutuality of obligation makes the contract unenforceable has no application. See *Nelson v. Schippel,* 143 Kan. 546, 56 P. 2d 469, where it was held:

"While mutuality is an essential element of every valid contract, the possible want of it was completely cured by subsequent prompt performance on the part of plaintiff; thereafter the contract was no longer executory, and former lack of mutuality, if it in fact existed, was no defense to the executed contract." (Syl. ¶ 2 [c].)

(See, also, 17 C. J. S. 448 and discussion in 12 Am. Jur. 509 *et seq.*) We are of opinion that under the circumstances here obtaining, the appellant's contention cannot be sustained.

Appellant next contends the description of the leased real estate is insufficient. This contention is predicated on the following. He calls attention to that part of the description reciting—

"Beginning at a point 125 feet west of the present sand and gravel bins of the first party and extending west for a distance of 150 feet and north for a distance of 100 feet"

and argues that two lines forming a letter "L" are given but that no land is enclosed. We cannot agree. The entire description must be read. It is, "a part of the premises hereinbefore referred to adjoining the railroad spur at the sand plant . . . beginning at a point 125 feet west," etc., as above. It seems clear to us that a "part of the premises" extending from a certain point west for a distance of 150 feet and north for a distance of 100 feet means a parallelogram of ground. It is also contended by appellant the point of beginning was uncertain. Perhaps viewed from one angle that is true. Appellant's premises were north of the Rock Island railroad tracks, which ran in a westerly direction bearing to the north. A point 125 feet directly west of the appellant's sand bin would have been in the middle of the railroad right of way. It is quite evident appellant did not intend to lease real estate to which it had no right and was not in possession, but from a plat introduced in evidence it is quite clear that even though exact directions were followed and a part of the right of way was included, all but a small part of the asphalt plant was within the boundaries so defined. The parties to the lease, however, gave it their own practical construction, and considered the direction from the point of beginning was westerly and along the railroad right of way, and the asphalt plant was erected on the parallelogram and stood there without any question being

raised from the time the plant was constructed shortly after the lease was made until controversy arose in the early part of 1938. We have examined the various authorities cited by appellant and appellee, but do not deem it necessary to comment thereon.

With respect to appellant's contention the lease had been canceled by mutual agreement of the parties prior to the assignment to plaintiff, it may be said that only a question of fact was presented. It was resolved in favor of appellee. It may be noted further that the evidence of dealings between the parties after the claimed cancellation was had, showed a course of dealing inconsistent with such a claim.

Appellant's last contention is that the evidence does not show appellee sustained damages. Reviewed very briefly, the evidence showed that appellee, after procuring paving contracts from the city of Topeka, started in to operate the plant, which had been idle. Controversy arose, and appellant built a switch or spur track which effectually prevented use of the asphalt plant. Finally appellee dismantled the plant and moved it to another location, where he already had some other equipment used in his business. He testified it was advantageous to him to have his plants all at one place and his overhead was reduced. From this appellant argues that his being compelled to move resulted in a benefit to him and that he was not damaged. That result does not follow. Appellee's evidence showed that because of appellant's conduct he was compelled to rearrange his business, he had to dismantle the plant for which, with the lease, he had paid $5,000. The cost of dismantling and reassembling the plant was $786.51. He certainly was out of pocket that amount of money. His cause of action arose from the wrongful act of the appellant, and his damage was complete when he removed his plant, as he was compelled to do in order to have the use of it. The fact the new location may be better than the former one may not now be urged to justify either mitigation or denial of damages.

We are of opinion there was no error in the trial court's judgment, and it is affirmed.