(Nos. 29505, 29506.—

THE PEOPLE *ex rel.* Baylus Hargrave, County Collector, Appellant, *vs.* JAMES E. PHILLIPS, Appellee.—THE PEOPLE *ex rel.* Baylus Hargrave, County Collector, Appellant, *vs.* MARY NEEL, Appellee.

*Opinion filed May 21, 1946.*

120

ALBERT McCALLISTER, State's Attorney, and CONGER & ELLIOTT, both of Carmi, for appellant.

ULYS PYLE, of Carmi, for appellee James E. Phillips; KERN & PEARCE, of Carmi, for appellee Mary Neel.

Mr. JUSTICE GUNN delivered the opinion of the court:

The appellees, James E. Phillips in No. 29505, and Mary Neel in No. 29506, each filed objections to the application of the collector of White county for judgment for certain taxes assessed against them. The county judge sustained the objections of both appellees, and the People have appealed to this court, as the revenue is involved. The cases have been consolidated for opinion.

The facts in the two cases are almost identical except for amounts and, for that reason, only those in the Neel case are stated. Mary Neel is the owner of forty acres of land which was valued at $450 in the 1943 assessment

of real estate. The tax on this valuation was $21.24, which was paid. This same land was also leased to the Pure Oil Company for the production of oil and gas, from which the appellee was to receive one eighth of all that was produced and saved from said premises. This royalty interest of appellee was separately assessed, under the designation of "mineral deed," as of the value of $5410, and the resulting tax levied was $255.35, which was paid by appellee under protest. The objection of appellee was directed to the last item on the ground there was no authority to tax the rental or royalty from an oil lease as land. The appellant contends there has been a severance of the surface and mineral estates, authorizing a separate taxation under section 7 of the Mining Act. Ill. Rev. Stat. 1943, chap. 94, par. 7.

The oil lease was dated June 8, 1936, and was in the form of the usual oil lease. The granting clause reads as follows:

"The said lessor, for and in consideration of ten dollars, cash in hand paid, the receipt whereof is hereby acknowledged, and of the covenants and conditions hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee for the sole purpose of mining and operating for oil and gas, and of laying of pipe lines, and of building tanks, power stations and structures thereon, to produce, save and take care of said products, all that certain tract of land * * *."

The rental clause reads:

"the said lessee covenants and agrees: 1st. To deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect wells on said land the equal one-eighth part of oil produced and saved from the leased premises."

Section 7 of the Mining Act, above cited, provides: "When the owner of any land shall convey, by deed or lease, any mining right therein, such conveyance shall be considered as so separating such right from the land that the same shall be taxable separately, * * *." By clear

language this section provides the owner must convey a mining right. It is immaterial whether the conveyance is by deed or by lease, but the right must be conveyed. The term "convey" has been construed to mean the same as a grant which passes title. *Cross* v. *Weare Commission Co.* 153 Ill. 499; *Nickell* v. *Tomlinson*, 27 W. Va. 697; *Fuller* v. *Hubbard*, 6 Cow. N. Y. 17, 16 Am. Dec. 423; *Quinton* v. *Mulvane*, 71 Kan. 687, 81 Pac. 486; *Vann* v. *Edwards*, 135 N. C. 661, 47 S. E. 784.

The question therefore arises, Does the oil lease to the Pure Oil Company convey a taxable estate in the land of appellee, separate from the rent or royalty to be paid, or is the rent or royalty an incorporeal right which accompanies the ownership of the land, and is therefore a part of the land itself? In this State we have held that rent is the compensation for the use of land. (*Scully* v. *People*, 104 Ill. 349; *Grommes* v. *St. Paul Trust Co.*, 147 Ill. 634.) In the *Scully case* we held specifically that rent in arrears is a chose in action and taxable as a credit, but rent to grow due is a part of the land and incident to it, and passing as such to a grantee, and is therefore not subject to taxation against the owner of the land, which is also taxed, and therefore the taxing of rents before due is the taxing of something included in the taxation of the land. This case is conclusive if receiving a part of the oil or gas produced is considered rent.

Royalty received from an oil-and-gas lease has been determined and held to be rent. (*Ohio Oil Co.* v. *Wright*, 386 Ill. 206; *Stoddard* v. *Illinois Improvement and Ballast Co.* 275 Ill. 199; *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503, 61 L. ed. 460.) A mining lease is a lease in fact as well as in name. (*Gartside* v. *Outley*, 58 Ill. 210; *Consolidated Coal Co.* v. *Peers*, 150 Ill. 344; *State* v. *Royal Mineral Ass'n*, 132 Minn. 232, 156 N. W. 128; *Boeing* v. *Owsley*, 122 Minn. 190, 142 N. W. 129.) Under

a mining lease the minerals belong to the lessor as long as they remain in the land, but the lessee has the right to explore and reduce them to possession, upon which he pays the reserved royalty or rent. (*People ex rel. Carrell* v. *Bell*, 237 Ill. 332; *Poe* v. *Ulrey*, 233 Ill. 56; *Triger* v. *Carter Oil Co.* 372 Ill. 182; *Updike* v. *Smith*, 378 Ill. 600.) Unaccrued rent is not personal property; it is a part of the land. *Pollock* v. *Farmers Loan & Trust Co.* 158 U. S. 601; 39 L. ed. 1108; *Scully* v. *People*, 104 Ill. 349; *Watson* v. *Penn*, 108 Ind. 21; *Den* v. *Craig*, 15 N. J. L. 195; *Wicklen* v. *Paulson*, 14 Barb. N. Y. 645.

The principle is well stated in *State* v. *Royal Mineral Ass'n*, 132 Minn. 232: "Unaccrued rents are not personal property. They are incorporeal hereditaments. They are an incident to the reversion and follow the land. [Citations.] They pass with a sale or devise of the land. [Citations.] If transferred apart from the land the provision of the statute of frauds relating to sales of lands applies. [Citations.] In fact, although separable from the reversion they are until such separation a part of the land. [Citations.]"

Under the foregoing well-settled principles a deed by appellee conveying the land upon which the lease was given would convey the lease and the right to receive unaccrued rentals. This would appear rather conclusively to show there had never been created a separate mineral estate within the meaning of the statute.

On the other hand, a mineral deed conveys or transfers title to the minerals, so that the grantee as to the minerals becomes the owner and may mine them or lease the right to mine to another. (*Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241; *Updike* v. *Smith*, 378 Ill. 600; *Conover* v. *Parker*, 305 Ill. 292.) When the separation of estates by a mineral deed occurs then the separate taxable estate is conveyed by the owner of the whole

land to the grantee of the mineral deed, within the meaning of section 7 of the Mining Act.

In this instance no mineral deed was made. The lease executed between the parties reserved rent. If rent was due and unpaid it was personal property and should not be assessed as land. If it was unaccrued rental it was realty belonging to the lessor. Appellee owned the forty acres in question, and the rental reserved to her from the Pure Oil Company was a part of such real estate while unaccrued, and would pass with a deed to the land; and if it had accrued and was due, as stated above, was personal property. Therefore it follows that the interest of appellee in the rent or royalty reserved from the Pure Oil Company lease was not a separate, taxable mineral estate in the land, as there never had been any conveyance, but simply, under numerous authorities, the right to mine and explore, and if found, to take possession of, when the reserved rental was paid.

The effect of the oil-and-gas leases upon the value of the land of appellee for taxable purposes is not before us, but the State had no power to assess the land of appellee as one estate, and her interest in the oil-and-gas lease, covering the same land in which rental was reserved, as another. It follows that the order of the county court in sustaining the objections in No. 29506 was correct, and should be affirmed.

While the facts in No. 29505 are quite similar, the objector (appellee) did not pay 75 per cent of the tax objected to as required by section 194 of the Revenue Act of 1939. (Ill. Rev. Stat. 1943, chap. 120, par 675.) The material part of this paragraph is as follows: "If any person shall desire to object pursuant to the provisions of section 235 [par. 716] of this Act, to all or any part of a real property tax for any year, for any reason other than that the real estate is not subject to taxation, he shall first

pay at least 75 per cent of the tax." For all real estate, except that within the exception, it is mandatory that 75 per cent of the tax be paid before an objection can be entertained. *People ex rel. Darr* v. *Alton Railroad Co.* 380 Ill. 380.

In *People ex rel. Fisher* v. *Baltimore & Ohio Railroad Co.* 390 Ill. 389, we called attention to the part of the section quoted above, and said: "The distinguishing feature between the two sections lies in the words 'for any reason other than the real estate is not subject to taxation.' This language is not in the prior statute, and, very obviously, it means that the owner of land which is not subject to any taxation at all is not required to pay any amount under protest in order to object to a tax." In that case there was no power to levy a drainage assessment because the land was outside the district, and the principle applies here.

Nobody claims the property represented by the oil-and-gas leases is not subject to taxation, but it cannot be taxed as separate real estate because rent, so long as it is unaccrued, is a part of the land. The tax on the real estate has been paid, and appellee cannot be required to pay another tax on real estate, by the method pursued by appellant. For this reason it was not necessary that appellee in No. 29505 pay 75 per cent of the amount of the tax before he was entitled to file objection to the legality thereof, and the motion of the State's Attorney to strike such objection was properly overruled.

For the reasons pointed out above, the orders of the county court of White county in both Nos. 29505 and 29506 are affirmed.

*Orders affirmed.*