No. 36,970

O. J. Connell (revived in the name of O. J. Connell, Jr., as Administrator of the Estate of O. J. Connell, Deceased), *Appellee,* v. Kanwa Oil, Inc., *Appellant.*

(194 P. 2d 950)

Opinion filed June 12, 1948.

*Harold W. McCombs,* of Russell, and *Paul M. Donald* and *J. M. Donald,* both of Bowie, Texas, were on the briefs for the appellant.

*O. J. Connell, Jr.,* of El Dorado, argued the cause, and *J. B. McKay,* of El Dorado, and *Jerry E. Driscoll,* of Russell, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action to recover damages for breach of contract.

The trial court struck certain allegations from the answer of the defendant, Kanwa Oil, Incorporated, in response to plaintiff's motion. The plaintiff was O. J. Connell, Sr. He died after the appeal was perfected and the action has been revived in the name of O. J. Connell, Jr., administrator of his father's estate.

Two other corporations were the owners of a producing oil and gas lease in Russell county. They are not parties to this action. The defendant, Kanwa Oil, Incorporated, a foreign corporation, owned an overriding royalty interest of one-eighth of eight-eighths of the oil, gas and casinghead gas produced, saved and sold from the leased premises. At the time the instant contract was entered into there were three producing wells on the lease. One was producing from the Topeka limestone and the other two were producing from the Kansas City limestone. Appellee agreed to purchase and appellant agreed to sell to him an undivided three-fourths interest in the overriding royalty for the consideration and upon the terms and conditions set forth in their contract. The pertinent part of the contract involved provided:

"1. Connell agrees that he will cause the owners of the working interest in the oil and gas lease covering said real estate to commence operations within ninety days from this date for deepening said Topeka Limestone well to the Kansas City Limestone, and to prosecute such operations with reasonable diligence until said well has been so completed to a depth sufficient to test the Kansas City Limestone, and to properly equip and complete said well in the Kansas City Limestone if oil or gas in paying quantities is encountered therein. If said well is not so deepened within the time and in the manner herein provided, this contract shall be and become null and void and no longer binding on either party hereto.

"2. As a further and additional consideration, Connell agrees to cause the owners of the working interest in said oil and gas lease to commence operations for the drilling of Well No. 4 on said leasehold, the same to be an offset to the producing well adjoining the above described real estate on the north, on or before October 15, 1945, and if operations for the drilling of said well are not commenced on or before said date, this contract shall be and become null and void and no longer binding on either party hereto.

"3. If Connell shall have caused said Well No. 1 to be deepened and operations for the drilling of said Well No. 4 to be commenced in accordance with the foregoing provisions, then as soon as said Well No. 4 is spudded, Kanwa shall execute, acknowledge and deliver to Connell a good and sufficient assignment of and for an undivided ¾ths interest in and to Kanwa's said overriding royalty, with full covenants of warranty, and Connell shall, upon receipt of such assignment, pay Kanwa the sum of $1,000.00 in cash. Said assignment shall be effective as of the date said Well No. 4 is spudded, and Kanwa shall, in addition to said assignment, execute and deliver an appropriate transfer order on the form of the pipe line company purchasing the oil from said premises.

"4. The covenants hereof shall be available to and binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns."

The petition, insofar as now pertinent, in substance alleged: Plaintiff had fully performed the contract; the wells mentioned in the contract were producing oil in paying quantities; the wells had been fully equipped; plaintiff was entitled to an assignment effective as of September 24, 1945, the date well No. 4 was spudded in; plaintiff tendered the sum of $1,000 to defendant; the defendant failed, neglected and refused to execute and deliver the assignment; defendant was a nonresident and plaintiff was unable to obtain service on it and to secure specific performance of the contract; the market value of plaintiff's contractual interest was $25,000 and plaintiff was damaged in that amount by reason of defendant's breach of contract.

The answer was quite lengthy. We do not deem it necessary to set forth verbatim all the allegations which were stricken. The

principal portion of the answer which was stricken and on which appellant appears to rely mostly was the following:

"For further answer herein, defendant avers that the alleged agreement attempted to be sued upon by the plaintiff herein is a unilateral agreement and unenforceable, for the reason that said alleged agreement is without consideration and does not purport to obligate the plaintiff to perform the same, or any part thereof, and that if said alleged agreement in anyway constitutes a valid contract between the parties thereto, which the defendant does not admit, but specifically denies, that the same constitutes nothing more than an option, which said option the plaintiff failed and neglected to exercise."

Was the transaction unilateral and therefore unenforceable? The transaction was based on mutual promises. Where the consideration is merely a promise for a promise all parties to the agreement must, of course, be bound thereby to make it enforceable. It is true appellee was not bound to perform. He did, however, perform and thereafter its provisions became mutual and binding. In other words, the promises thereafter ripened into a binding contract. (*Brick Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803.)

Appellant argues the contract was at most an option. Assuming that was originally true, it is the very essence of an option contract that one party has the choice of concluding or not concluding a proposed transaction while the other party has no choice. It is the right of such choice for which a party receiving an option pays. (*Brick Co. v. Bailey,* supra, p. 46, 47; *Rolander v. Sanderson,* 141 Kan. 809, 812, 43 P. 2d 1061.) Where a party exercises an option by performance which benefits the other party the latter manifestly cannot repudiate the deal on the ground it was originally unilateral.

Under the terms of this instrument and the admitted performance thereof by appellee the allegation in defendant's answer that plaintiff failed to exercise his option was not admitted by the motion to strike. That motion was tantamount to a demurrer. A demurrer never admits naked conclusions but only facts well pleaded. Under this instrument appellee, in order to exercise his rights, was not obliged to make a demand for the assignment. It was the duty of appellant to execute and deliver the assignment when appellee performed. It was only after the assignment was executed and delivered by appellant that appellee was required to pay the $1,000 stipulated. Only lack of performance could defeat appellee's right to the assignment.

The trial court struck allegations from the answer that both prior to and after the execution of the written agreement plaintiff had

stated he would keep defendant informed as to the progress and results of deepening operations on well No. 1 and as to the date of spudding well No. 4; that such statements were relied upon and the agreement would not have been made without such promises.

The promises, if made, pertained to things to be done in the future. They did not constitute misrepresentations of present facts. They added something not contained in the written instrument. All alleged prior representations are presumed to have been merged in the written contract. The answer alleged no additional and independent consideration for the alleged subsequent oral promises. The representations, if made, could not well form the basis for repudiation on the ground of fraud in this case. Irrespective of what appellee's performance disclosed with respect to production, it could not have relieved appellant from making the assignment on the date the contract specified. Assuming appellee made such promises, appellant alleged no facts disclosing in what manner it was prejudiced by appellee's failure to keep them. There are, of course, instances where evidence of oral fraudulent representations which induced the making of a contract may be shown. Under the circumstances here presented it was not reversible error to strike the allegations.

Appellant argues the court should not have stricken allegations that the owners of the lease had mortgaged the leasehold estate and that under the terms of the mortgage the owners were required to develop the lease in any event and that no contract with appellee for its development was required. We fail to comprehend the materiality of that portion of the answer. It was a contract between the owners of the lease and the mortgagee and not with appellee. Moreover, the terms of the instant contract were not the same as those between the owners of the lease and the mortgagee. We do not see how the order to strike such allegations deprived appellant of a substantial defense. If the ruling were reviewable at all we could not now conclude it constituted an abuse of sound judicial discretion.

Did the court err in striking further allegations in the answer that appellant made no demand for an assignment until after well No. 4 had been completed and the value of the overriding royalty had been determined and that such delayed demand constituted fraud, laches and speculative delay? Appellee, as already stated, was under no duty to make any demand for the assignment and the order striking such allegations cannot be regarded as prejudicial to appellant.

Nor, in view of what already has been stated, can it be said the court erred in striking allegations that the agreement was ambiguous and indefinite and that it had been construed by the parties as constituting merely an option to be exercised when well No. 4 was spudded in.

These are the principal points raised on appeal. It is doubtful that some of the rulings treated are reviewable. In any event, if reviewable, we think no reversible error is shown to have resulted from the rulings. The allegations retained in the answer appear quite adequate to raise every proper defense available to appellant.

In the event the trial should develop the materiality of any matters which have been stricken we must, and do, assume the trial court will properly rule thereon as the circumstances arise. At this stage of the proceedings the rulings must be affirmed. It is so ordered.

COWAN, J., not participating.