No. 44,294

COMMERCIAL ASPHALT, INC., *Appellee,* v. MILO G. SMITH and FRANK L. SMITH d/b/a BIG THREE SAND & GRAVEL COMPANY, *Appellants.*

(409 P. 2d 796)

Opinion filed January 22, 1966.

*Ralph E. Gilchrist* and *Harry E. Robbins, Jr.,* both of Wichita, argued the cause, and *Lyndon Gamelson* and *Donald C. Tinker, Jr.,* both of Wichita, were with them on the briefs for the appellants.

*Benjamin C. Langel,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert W. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin* and *Mikel L. Stout,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This action was brought for the purpose of having a sand lease declared unenforceable and the lessees removed from the leased premises.

The case was tried to the court on stipulated facts which will be summarized.

On February 20, 1954, Henry and Emma Koster, husband and wife, entered into a written agreement with the Big Three Sand and Gravel Company which was executed by the defendant, Frank L. Smith. The agreement specifically described 40 acres in Sedgwick County, Kansas, and continued:

"WHEREAS, the party of the second part is desirous of pumping, producing and purchasing sand from property.

"Now THEREFORE, in consideration of the money payments hereinafter set out and the mutual covenants and agreements herein contained, it is agreed as follows:

"FIRST: The parties of the first part hereby grants unto the party of the second part for a period of twenty (20) years from date hereof, unless terminated or extended as hereinafter provided, the right to pump, produce and purchase sand from said property, as the party of the second part may see fit and proper."

The second paragraph provided for the payment of five cents per ton for the sand removed and an automatic termination of the contract in event the payments were overdue for 45 days. The third paragraph provided for payment of $100.00 per month as rental if pumping operations ceased for a period of sixty days or longer.

The contract further provided:

"FOURTH: The party of the second part shall have the right to terminate this contract at any time by ceasing operations, removing all equipment from the premises and notifying the parties of the first part that it has ceased operations and is terminating this agreement by reason thereof.

"FIFTH: It is further agreed that the parties of the first part hereby grant unto the party of the second part the right of ingress and egress from said property and the authority to place thereon a railroad spur to be used in any manner that the party of the second part may deem fit and proper."

Omitting other provisions of the lease agreement, one of which prohibited assignment without written consent, the lease agreement concluded by making the contract binding on the heirs and assigns of both parties.

The lessees took possession of the property and placed thereon such equipment as was necessary to pump and remove the sand. They complied with all the terms of the lease agreement. The lessees operated the lease to the apparent satisfaction of the lessors for a period of eleven years.

On January 22, 1964, the plaintiff, Commercial Asphalt, Inc., purchased the land covered by the sand lease agreement. The knowledge of the purchaser as to the existing lease agreement is well expressed by the stipulation which reads:

". . . It is stipulated that the plaintiff had constructive notice by reason of the recording and also had actual notice of it, and it was the plaintiff's position that the contract was invalid, having read it and upon advice of counsel."

On January 30, 1964, the plaintiff addressed a letter to Milo Smith informing defendants that they were cancelling the contract because it was unilateral and because the addition of Milo, the son of Frank, to the partnership constituted an unlawful assignment.

Sometime later, the date is not disclosed by the record, this action was brought. The trial court concluded:

"1. Paragraph numbered Fourth of said contract, plaintiff's exhibit A as attached to plaintiff's petition and plaintiff's exhibit 1 in evidence, controls and determines this action in that said paragraph provides that Big Three can terminate said contract at will, and therefore, as a matter of law Koster, or in this case his assignee Commercial, can terminate said contract at will.

"2. As this action is terminated by the conclusion of law set out in paragraph numbered 1 above, it is not necessary for this court to pass upon any other issues set out by the pleadings of the parties."

Judgment was entered for plaintiff and defendants have appealed.

Appellants contend that if there was lack of mutuality in the agreement, the defect was cured by prompt performance. As we are inclined to agree with appellants, we will give attention to the argument of appellee in support of the judgment.

The appellee first contends that, there being no independent consideration, the contract is void for lack of mutual obligation to perform. Appellee suggests that the lessees could have walked away without making any attempt to perform the contract and the lessors would have had no recourse. There is merit to appellee's contention. However, the lessees did not choose to walk away. They proceeded immediately to move the necessary equipment on the leased premises, produce sand and pay royalty to the lessors. It would appear from the lease agreement that the lessees wanted sand; the lessors wanted the royalty money for the sand produced. Everything was performed as and when the contract anticipated.

This court adheres to the rule that if an agreement is unilateral, and not originally binding on one of the parties, but has been performed by the party not bound so that the other party has received the promised benefits, the contract becomes binding on the benefited party. The lack of mutuality is cured where the contract is executed.

The rule was recognized in *Connell v. Kanwa Oil, Inc.,* 165 Kan. 241, 194 P. 2d 950, where we stated:

"Was the transaction unilateral and therefore unenforceable? The transaction was based on mutual promises. Where the consideration is merely a promise for a promise all parties to the agreement must, of course, be bound thereby to make it enforceable. It is true appellee was not bound to perform. He did, however, perform and thereafter its provisions became mutual and binding. In other words, the promises thereafter ripened into a binding contract. (*Brick Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803.)

"Appellant argues the contract was at most an option. Assuming that was originally true, it is the very essence of an option contract that one party

has the choice of concluding or not concluding a proposed transaction while the other party has no choice. It is the right of such choice for which a party receiving an option pays. (*Brick Co. v. Bailey*, supra, p. 46, 47; *Rolander v. Sanderson*, 141 Kan. 809, 812, 43 P. 2d 1061.) Where a party exercises an option by performance which benefits the other party the latter manifestly cannot repudiate the deal on the ground it was originally unilateral." (p. 243. See, also, *French v. French*, 161 Kan. 327, 167 P. 2d 305; *Nelson v. Schippel*, 143 Kan. 546, 56 P. 2d 469; *Kilmer v. Victory Sand & Stone Co.*, 153 Kan. 381, 110 P. 2d 798.)

Again in *Braniff v. Baier*, 101 Kan. 117, 165 Pac. 816, we stated:

"In a litigation over a contract to find a purchaser for land the question was raised that the contract was unilateral. The testimony showed that after receiving the owner's proposal the broker proceeded to find a purchaser and to do the things which it was contemplated would be done by him, and it was held that such action on his part constituted an acceptance, and that thereafter the contract was a mutual and binding obligation. (*John E. DeWolf Co. v. Harvey*, 161 Wis. 535.)

"In *Pullman Co. v. Meyer*, 195 Ala. 397, it was said:

" 'Even though an agreement is, when made, unilateral, if the party in whose favor the promise is made accepts its performance, or does "any act in recognition of its implied or intended, though unexpressed, consideration, this supplies the element of mutuality, and gives a right of action'." (p. 401.)

"Other cases of like import are *Rowan & Co. v. Hull*, 55 W. Va. 335; *Lapham v. Flint*, 86 Minn. 376; *Schoenmann v. Whitt*, 136 Wis. 332; *Novakovich v. Union Trust Co.*, 89 Ark. 412; *Blumenthal v. Bridges*, 91 Ark. 212." (p. 120. See, also, *Ramey v. Thorson*, 94 Kan. 150, 146 Pac. 315; *Quinton v. Mulvane*, 71 Kan. 687, 691, 81 Pac. 486.)

Appellee next contends that the contract is terminable at the will of the appellee because it is terminable at the will of appellants. Appellee states:

". . . The defendant, Frank Smith, having commenced operations on what is now the appellee's land under a void contract is subject to having his permissive use terminated at the option of the appellee just as the appellee was subject to having the defendants cease operations without warning or justification at any time. . . ."

We cannot agree with appellee's contention under the facts and circumstances in this case.

Once the parties have in good faith entered into the performance of a contract and are doing everything possible to complete it, any reasonable consideration will be sufficient to protect it against an attack of lack of mutuality. The appellee concedes that one dollar would be sufficient independent consideration. In a lease such as the one before us, in the absence of mutuality of obligation, the consideration may be either a benefit passing to the lessors or a detriment to the lessees.

Before the lessees could start producing, equipment for pumping and loading the sand had to be moved on the premises. This was a benefit to the lessors if they wanted the sand produced and the royalty paid. It was some detriment to the lessees. Once the equipment was moved on the premises and development started, the lessees could not cease operations without written notice to the lessors and the removal of all the equipment from the premises. This again was a detriment to the lessees.

The appellee would belittle the above mentioned consideration. However, it is in no position to question the adequacy of the consideration. The original lessors were satisfied with the performance of the lessees over a period of eleven years. They had never questioned the adequacy of the consideration which grew out of the performance by the lessees.

This court had a somewhat similar situation under consideration in *Compton v. Gas Co.*, 75 Kan. 572, 89 Pac. 1039, where it was said:

". . . After a lessee has operated under a lease for four years, and expended money in carrying out its terms, and the lessor during that time has accepted the consideration and benefits, a third party who takes a subsequent lease with notice of the former and of the facts cannot be permitted to defeat or set aside the former lease upon such grounds [lack of mutuality].

"Numerous suggestions are made in plaintiff's brief in regard to the character of oil-and-gas leases generally, the necessity that there should be mutuality, and whether they are mere options revocable at pleasure. None of these questions, in our view of this case, is involved. . . .

"He contracted with knowledge of the first lease, its terms and conditions, and bought a lawsuit. Most of the facts are admitted by stipulation. . . ." (p. 577.)

A careful examination of the record discloses no reason for a court of equity interfering with defendants' peaceful possession and enjoyment of the leased premises as provided in the lease agreement.

The judgment is reversed.

APPROVED BY THE COURT.