No. 44,917

Commercial Asphalt, Inc. *Appellant,* v. Milo G. Smith and Frank Smith d/b/a Big Three Sand & Gravel Company, *Appellees.*

(436 P. 2d 849)

Opinion filed January 27, 1968.

*Benjamin C. Langel,* of Wichita, argued the cause, and *George B. Powers, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Phillip S. Frick, Jerry G. Elliott, John E. Foulston* and *Stanley G. Andeel,* all of Wichita, were with him on the briefs for the appellant.

*Ralph E. Gilchrist* and *Harry E. Robbins, Jr.,* both of Wichita, argued the cause, and *Carl L. Buck, Stephen K. Lester, Lyndon Gamelson, Kenneth H. Hiebsch* and *Donald C. Tinker, Jr.,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This was an action to cancel an instrument in the nature of a mineral lease restricted to sand. The plaintiff also sought damages and injunctive relief.

This is the second lawsuit between the same parties. The previous action also involved an attempt to cancel the lease. (See *Commercial Asphalt v. Smith,* 196 Kan. 164, 409 P. 2d 796.) The present action involves alleged improper use of the lease by the defendants subsequent to the trial of the first litigation covering the years 1965 and 1966.

The plaintiff's chief complaint is that the defendants committed waste by removing topsoil which was not necessary to the sand operation and by operating a public dump on the premises.

The instrument under which the controversial operations were conducted will be summarized in part and quoted in part.

Henry Koster and his wife were the owners of 40 acres of land in Sedgwick County, Kansas. In February of 1954, as parties of the first part, they agreed with Frank L. Smith d/b/a The Big Three Sand and Gravel Company, as parties of the second part, that—

"The parties of the first part hereby grants unto the party of the second part for a period of twenty (20) years from date hereof, unless terminated or extended as hereinafter provided, *the right to pump, produce and purchase sand from said property,* as the party of the second part may see fit and proper." (Emphasis supplied.)

The grantors were to receive seven cents per cubic yard or five cents per ton, depending on the method of operation, "for all sand or earth removed from said property." Part of the nonoperative clause should be quoted as follows:

"In the event the party of the second part ceases pumping operations for a period of sixty (60) days or longer, the party of the second part hereby agrees to pay the sum of One Hundred Dollars ($100.00) per month as rent until said pumping operations shall commence. . . ."

The instrument then extended to the grantee the right to terminate, which is not material here, and then concluded:

"It is further agreed that the parties of the first part hereby grant unto the party of the second part the right of ingress and egress from said property and the authority to place thereon a railroad spur to be used in any manner that the party of the second part may deem fit and proper.

"It is further agreed that the rights herein granted the party of the second part shall, in no way, interfere or limit the parties of the first part use or oc-

cupancy of that part of the premises not under actual pumping operations, or prevent or limit the parties of the first part's right to let or lease the above described property for any other purpose."

The plaintiff purchased the land from the Kosters in 1964.

Following a trial of the issues the trial court concluded that the excessive stripping of topsoil and the operation of a commercial dump on the premises constituted breaches of the agreement. Injunctive relief was granted but other relief was refused.

The plaintiff has appealed.

More detailed facts, and findings and conclusions of the trial court, will be presented as we consider the specific issues.

The appellant first contends that the trial court erred in refusing to award damages after it found that the appellees had wrongfully removed topsoil or overburden from the leased land.

We are inclined to agree.

The trial court concluded on this issue:

". . . The Court is of the opinion, first, that the contract entered into between Frank L. Smith, doing business as Big Three Sand Company and Henry Koster, Jr., and his wife Emma Koster, is a lease for the purpose of the lessee producing primarily sand from the leased premises.

"Court is also of the opinion that in the production of sand the lessee has the right to remove the overburden, topsoil or silt, which is necessary and incidental to the conducting of the business of producing sand and gravel.

". . . However, the Court is of the opinion that the extensive stripping of the topsoil and silt done by Milo during the year 1965 was neither necessary nor incidental to the operation of the sand and gravel business. . . ."

The trial court also concluded that the extensive stripping was a breach of the lease. There has been no appeal from the findings and conclusions and they are now controlling in the case. It might be suggested, however, that they are amply supported by the record.

The grant was the right to pump and produce sand. There was no specific grant to produce the silt or overburden. All parties agree that the appellees had the right to produce and remove the overburden necessary and convenient to the production of the sand and was obligated to pay the appellant the same royalty thereon as was paid for the sand. However, the evidence discloses that the topsoil became valuable during the years 1965 and 1966 because of the silt which was used for making asphalt and the removal and sale of the topsoil became the major part of the mining operation. One of the appellees testified:

"Q. A little while ago, you said you hadn't changed the nature of your operation. As a matter of fact, Mr. Smith, since the judgment in this case, you have changed the nature of your operation because in the last two months you have done far more silt stripping or sold more silt off than you ever have sand, haven't you?

"A. Yes, I would say the silt has gone ahead of the sand.

"Q. Do you remember being asked that question and giving that answer?

"A. Yes, sir.

"Q. Do you remember being asked this question and giving this answer:

"Q. You don't contend or claim that the 500 or 600 yards of silt stripping that have taken place to the west of this pit is necessary for the widening of your sand pit, do you, sir?

"A. No, it is not absolutely necessary.

"Q. As a matter of fact, the sand dredge and the tipple are off to the left or north of this edge of this picture, aren't they?

"A. This is true.

"Q. Do you remember being asked those questions and giving those answers?

"A. Yes, sir, I do."

We are forced to conclude that the trial court should reconsider the evidence before it, make a determination of the amount of top-soil which was removed and which was not necessary or incidental to the production of sand and give appellant judgment for the reasonable value thereof less any amount that has already been paid as royalty. If, for any reason, the evidence is insufficient to enable the trial court to make such a determination it should so state.

The nature of the instrument under consideration and the rights and liabilities of the parties thereunder will be given more detailed consideration as we approach appellant's third contention.

We quote appellant's next contention as follows:

"The trial court erred in refusing to award plaintiff any damages or to impose a constructive trust upon dumping fees received by defendants after it found that defendants had wrongfully carried on a commercial trash dumping operation on plaintiff's property."

We do not agree with this contention. Although the trial court found that "permitting people to commercially dump upon the premises is not either necessary or incidental to the operation of the sand and gravel business" there was evidence that some dumping of heavy material was necessary in creating a land fill and appel-lant's evidence was far short of any definite damage to the premises as a future commercial recreational center.

Neither is there evidence of any specific amount of income to appellees from dumping operations on which a constructive trust could attach. The testimony was to the effect that the income from

dumping operations no more than equaled the cost of maintaining a supervisor to burn the trash and look after the grounds.

We find no error in the trial court's refusal to allow damages for this item.

As a third contention the appellant claims that the trial court erred in ruling that plaintiff has no right to remove the overburden or topsoil from the land during the term of the lease for sand.

Again we are inclined to agree with appellant's contention. The trial court concluded orally on the immediate question:

"Court is going to further enjoin Milo from removing any additional topsoil or silt from the property until the area in which the topsoil and silt has now been removed has been pumped out, and then will permit after that Milo to remove the topsoil and silt in the amount that is either necessary or incidental to the removal of the sand and gravel on the property.

. . . . . . . . .

". . . That the Court is of the opinion that it may be necessary and incidental to the operation of Milo's sand pit during the balance of the lease to have the right to sell and dispose of the topsoil and silt. The Court is restraining Milo from removing any until such time as the area wherein it has not been removed is pumped out.

"MR. HOWARD: I am not trying to quarrel with your decision; I am trying to find the rights of my client. We have tried and we have been stopped. Are you ruling we have no right to the silt and topsoil that has not been stripped that is over away from the pit?

"THE COURT: Right."

It would appear that the court misconstrued the nature of the instrument and the rights of the parties thereunder.

The instrument is in form an ordinary mineral or mining lease. The instrument granted the appellees the right to pump and produce sand on the payment of a designated sum per cubic yard or ton for a period of twenty years with the right of ingress and egress.

The instrument grants no estate in the land. It grants no title to the sand until it is produced. The instrument, like a mineral or mining lease, creates a *profit a prendre* in the nature of an incorporeal right.

In *Burden v. Gypsy Oil Co.*, 141 Kan. 147, 150, 40 P. 2d 463, we stated:

"A *profit a prendre* is the right to take soil, gravel, minerals and the like from the lands of another and is in its nature an incorporeal right. In *Brinkman v. Empire Gas & Fuel Co.*, 120 Kan. 602, 245 Pac. 107, it was held the nature of the grant of an oil and gas lease was of a *profit a prendre* which the grantee might utilize or refrain from utilizing, subject to the conditions of the grant, and in the recent case of *Hardcastle v. McCluskey*, 139 Kan. 757, 33 P.

2d 127, it was held that it is the grantee who has the *profit a prendre*." (See, also, *Shields v. Fink, Executrix,* 190 Kan. 17, 21, 372 P. 2d 252.)

The instrument does not purport to give to the grantee the right to the topsoil. It is conceded, however, that the grantee must remove the topsoil before pumping the sand and that by practice, custom or usage the grantee has the right to sell the sand so removed, but not the right to remove and sell topsoil not necessary to the removal of the sand.

The instrument specifically provides:

"It is further agreed that the rights herein granted the party of the second part shall, in no way, interfere or limit the parties of the first part use or occupancy of that part of the premises not under actual pumping operations, or prevent or limit the parties of the first part's right to let or lease the above described property for any other purpose."

This provision clearly reserves in the grantor the use and occupancy of the land not under actual pumping operations. If the topsoil is removed ahead of the pumping operations the grantee can have no complaint. He was not granted the topsoil.

We are forced to conclude that the grantor has the right to use land in any manner so long as he does not interfere with the sand or the right of the grantee to pump.

We find no merit in appellant's contention that the trial court erred in refusing to cancel the agreement after finding the conduct of the appellees to be so wrongful as to justify issuing an injunction against them.

Equity dislikes to enforce forfeitures. It will not do so where less drastic redress will satisfy the demands of justice. (*Alford v. Dennis,* 102 Kan. 403, 405, 170 Pac. 1005.) It may also be suggested that appellant has accepted payments during the period involved in the controversy.

In *Storm v. Barbara Oil Co.,* 177 Kan. 589, 282 P. 2d 417, we stated:

". . . There is much interesting comment in 58 C. J. S., Mines and Minerals, § 205, p. 502, but the context is too long to set out in full. The rule is clear that the lessor who intends to claim forfeiture cannot accept and retain profits in the way of rents or royalties. . . ." (p. 599.)

The trial court exercised proper discretion in granting injunctive relief rather than forfeiture.

The appellant contends that it was error for the trial court to dismiss the defendant, Frank L. Smith, from the action.

Insofar as Frank L. Smith was a member of the partnership operating as grantee under the instrument while topsoil was improperly removed, we are inclined to agree. The evidence indicates that Frank L. Smith was a partner in The Big Three Sand and Gravel Company during the year 1965 and part of 1966, the period when topsoil was removed in breach of the agreement and is responsible in damages if the partnership is not able to respond. Each partner is liable for the whole amount of the partnership debts. In *Lawson v. Lawrence Oil and Gas Co.*, 135 Kan. 740, 12 P. 2d 711, we held:

"Each partner is liable for the whole amount of the debts of the partnership, but whoever of their members satisfies that indebtedness is entitled to contribution from the other partners in proportion to their respective interests in the partnership." (Syl. 2.)

Although not a necessary party for the injunctive relief, Frank L. Smith is a proper party defendant if damages are awarded for acts committed during the period he was a partner.

The appellant complains of the trial court's order dividing the costs of the case equally between the parties. We find no abuse of the trial court's discretion. The appellant, in the court below, received only part of the relief requested. K. S. A. 60-2002 provides in part:

"Unless otherwise provided by statute, or by order of the judge, the costs shall be allowed to the party in whose favor judgment is rendered."

Here the costs were taxed by order of the judge. The taxing of costs in an equitable action will be reviewed only for abuse of discretion by the trial judge. (*Middlebrook v. Winterscheidt*, 118 Kan. 731, 236 Pac. 825.) It might also be suggested that the chief relief sought by plaintiff—cancellation of the agreement—was denied.

The judgment is affirmed in part, reversed in part and remanded to the district court with instructions to re-examine the record on the question of damages for improper removal of topsoil as stated in the opinion.

APPROVED BY THE COURT.